PARIENTE, J.
 

 The issue before us involves double jeopardy — specifically whether dual convictions for discharging a firearm from a vehicle within 1000 feet of a person in violation of section 790.15(2), Florida Statutes (2003), and shooting into an occupied vehicle in violation of section 790.19, Florida Statutes (2003), arising from the same criminal episode, violate double jeopardy. The Third District Court of Appeal in
 
 Valdes v. State,
 
 970 So.2d 414 (Fla. 3d DCA 2007), concluded that no double jeopardy violation occurred from the dual convictions and certified conflict with
 
 Lopez-Vazquez v. State,
 
 931 So.2d 231 (Fla. 5th DCA 2006), which reached the opposite conclusion. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(4), Fla. Const.
 

 We reach two related conclusions in this case. First, because we conclude that our prior double jeopardy jurisprudence announcing the “primary evil” standard has proven difficult to apply and has strayed from the plain language of the governing statute, we now adopt the approach set forth in Justice Cantero’s special concurrence in
 
 State v. Paul,
 
 934 So.2d 1167 (Fla.2006). Thus, we hold that section 776.021(4)(b)(2), Florida Statutes (2008), prohibits “separate punishments for crimes arising from the same criminal transaction only when the
 
 statute
 
 itself provides for an offense with multiple degrees.”
 
 Paul,
 
 934 So.2d at 1176 (Cantero, J., specially concurring). Second, by applying this simple test to this case we conclude that dual convictions under 790.15(2) and section 790.19 do not violate the prohibition against double jeopardy. Accordingly, we approve the result in
 
 Valdes
 
 and disapprove
 
 Lopez-Vazquez.
 

 FACTS
 

 Valdes, who was driving his own vehicle, pulled up next to a vehicle being driven by Rocío Rodriguez, in which her sister, Natalie Gianella, and Rodriguez’s minor daughter were passengers. Gianella, Rodriguez, and Valdes knew each other and had previous disputes. Valdes rolled down his window, as did Gianella, and the two began arguing. Valdes pulled out a gun, and Gianella began laughing at him. When the light turned green and the vehicle started to move, Valdes began shooting at the vehicle, firing four or five shots. Gianella was struck in the arm and foot. Valdes was charged with three counts of attempted second-degree murder with a firearm and one count each of discharging a firearm from a vehicle within 1000 feet of a person in violation of section 790.15(2), Florida Statutes (2003), and shooting into an occupied vehicle in violation of section 790.19, Florida Statutes (2003).
 
 [1]
 
 The jury found Valdes guilty as charged on all
 
 *1069
 
 counts and he was sentenced to concurrent thirty-year prison terms on each count.
 

 On appeal to the Third District, Valdes argued in pertinent part that his dual convictions for discharging a firearm from a vehicle within 1000 feet of a person and shooting into an occupied vehicle violated double jeopardy. In evaluating whether Valdes’s convictions fell under the subsection (4)(b)(2) exception to the
 
 Blockburger
 

 [2]
 

 test as codified in section 775.021(4), that the offenses are degrees of the same offense, the Third District recognized that “[o]ffenses are considered degree variants of the same core offense where both crimes intend to punish the ‘same primary evil.’ ”
 
 Valdes,
 
 970 So.2d at 419 (citing
 
 Paul,
 
 934 So.2d at 1175). The court acknowledged the decision of the Fifth District Court of Appeal in
 
 Lopez-Vazquez,
 
 in which the Fifth District concluded that convictions under sections 790.15(2) and 790.19, arising from the same criminal episode, violate double jeopardy.
 
 Valdes,
 
 970 So.2d at 419.
 

 In the conflict case of
 
 Lopez-Vazquez,
 
 the Fifth District described these facts: “[A]n incident of road rage escalated into extreme acts of violence, culminating in the attempt by Vazquez to take the life of the victim. As Vazquez sat in his vehicle, he fired his weapon into the vehicle occupied by the -victim, wounding the victim in the arm.” 931 So.2d at 232. The Fifth District concluded that the offenses of discharging a firearm from a vehicle within 1000 feet of a person in violation of section 790.15(2) and shooting into an occupied vehicle in violation of section 790.19 shared the same core offense of battery.
 
 Id.
 
 at 235. The Third District disagreed not only with this conclusion but also with the Fifth District’s conclusion that the primary evil punished by the two statutes in question “ ‘is the endangerment of the safety of those who may be struck by the discharge from the firearm,’ and that both of these offenses share the same evil.”
 
 Valdes,
 
 970 So.2d at 419 (citation omitted). These diametrically opposed decisions applying the same precedent give rise to the certified conflict in this case.
 
 [3]
 

 ANALYSIS
 

 Double Jeopardy Principles
 

 The most familiar concept of the term “double jeopardy” is that the Constitution prohibits subjecting a person to multiple prosecutions, convictions, and punishments for the same criminal offense. The constitutional protection against double jeopardy is found in both article I, section 9, of the Florida Constitution and the Fifth Amendment to the United States Constitution, which contain double jeopardy clauses.
 
 [4]
 
 Despite this constitutional protection, there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal transaction as long as the Legislature intends to authorize separate punishments.
 
 See Hayes v. State,
 
 803 So.2d 695, 699 (Fla.2001) (“As the United States Supreme Court explained in
 
 Brown v. Ohio,
 
 432 U.S. at 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), where multiple punishments are imposed at a single trial, ‘the role of the constitutional guarantee against
 
 *1070
 
 double jeopardy is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments arising from a single criminal act.’ ”);
 
 Borges v. State,
 
 415 So.2d 1265, 1267 (Fla.1982) (“The Double Jeopardy Clause ‘presents no substantive limitation on the legislature’s power to prescribe multiple punishments,’ but rather, ‘seeks only to prevent courts either from allowing multiple prosecutions or from imposing multiple punishments for a single, legislatively defined offense.’ ”) (quoting
 
 State v. Hegstrom,
 
 401 So.2d 1343, 1345 (Fla.1981)). As we recognized in
 
 Gordon v. State,
 
 780 So.2d 17 (Fla.2001):
 

 The prevailing standard for determining the constitutionality of multiple convictions for offenses arising from the same criminal transaction is whether the Legislature “intended to authorize separate punishments for the two crimes.”
 
 M.P. v. State,
 
 682 So.2d 79, 81 (Fla.1996);
 
 see State v. Anderson,
 
 695 So.2d 309, 311 (Fla.1997) (“Legislative intent is the polestar that guides our analysis in double jeopardy issues....”). Absent a clear statement of legislative intent to authorize separate punishments for two crimes, courts employ the
 
 Blockburger
 
 test, as codified in section 775.021, Florida Statutes (1997), to determine whether separate offenses exist.
 
 See Gaber v. State,
 
 684 So.2d 189, 192 (Fla.1996) (“[Ajbsent an explicit statement of legislative intent to authorize separate punishments for two crimes, application of the
 
 Blockburger
 
 ‘same-elements’ test pursuant to section 775.021(4) ... is the sole method of determining whether multiple punishments are double-jeopardy violations.”) (footnote omitted).
 

 Gordon,
 
 780 So.2d at 19-20 (footnote omitted).
 

 In this case there is no clear statement of legislative intent to authorize or to prohibit separate punishments for violations of sections 790.15(2) and 790.19.
 
 [5]
 
 Both parties and both district courts of appeal agree with this simple conclusion. Because there is no clear legislative intent to be discerned, the next inquiry is whether separate punishments for the two convictions violate the
 
 Blockburger
 
 test, as codified in section 775.021(4). That section provides:
 

 (4)(a) Whoever, in the course of one criminal transaction or episode, commits
 
 *1071
 
 an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
 

 (b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
 

 1. Offenses which require identical elements of proof.
 

 2. Offenses which are degrees of the same offense as provided by statute.
 

 3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
 

 § 775.021(4), Fla. Stat. (2003).
 

 It is undisputed that sections 790.15(2) and 790.19 each contain an element that the other does not. Shooting from a vehicle in violation of section 790.15(2) requires proof of two elements: (1) the defendant knowingly and willfully discharged a firearm from a vehicle; and (2) the discharge occurred within 1000 feet of any person. § 790.15(2), Fla. Stat. (2003). In contrast, section 790.19 requires proof of the following three elements: (1) the defendant shot a firearm; (2) he or she did so at, within, or into a vehicle of any kind that was being used or occupied by any person; and (3) he or she did so wantonly or maliciously. § 790.19, Fla. Stat. (2003). Thus, separate convictions for these two offenses are authorized unless the offenses fit within one of the three exceptions in section 775.021(4)(b).
 

 There is likewise no dispute that the first and third exceptions under subsection (4)(b) do not apply to the offenses at issue; the offenses do not require identical elements of proof and the offenses are not lesser offenses the statutory elements of which are subsumed by the greater offense. The focus in this case, as in many other recent cases from this Court, is subsection (4)(b)(2)-whether the offenses “are degrees of the same offense as provided by statute.” We now answer that question by first reviewing our case law interpreting subsection (4)(b)(2), and then explaining why we adopt the approach set forth in Justice Cantero’s special concurrence in
 
 State v. Paul,
 
 934 So.2d 1167 (Fla.2006).
 

 This Court’s Jurisprudence Interpreting Section 775.021(4) (b)(2)
 

 More than twenty years ago, this Court recognized that there was considerable confusion in the law of this state concerning the proper method of construing criminal statutes in light of the prohibition against double jeopardy.
 
 See Carawan v. State,
 
 515 So.2d 161, 164-68 (Fla.1987),
 
 superseded by statute,
 
 ch. 88-131, § 7, Laws of Fla. In an attempt to alleviate some of the confusion, we set forth rules of construction to address the issue of whether a single act could be the basis for multiple convictions:
 

 The first is that “specific, clear and precise statements of legislative intent control” and “courts never resort to rules of construction where the legislative intent is plain and unambiguous.”
 
 [Carawan,
 
 515 So.2d] at 165. The second step, absent a specific statement of legislative intent in the criminal offense statutes themselves, is to apply section 775.021(4),[
 
 6
 
 ] codifying
 
 Blockburger v.
 
 
 *1072
 

 United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to the statutory elements of the criminal offenses. We added judicial gloss by assuming that the legislature “does not intend to punish the same offense under two different statutes,” and that the courts should not mechanically apply section 775.021(4) so as to obtain “unreasonable results.”
 
 Carawan,
 
 515 So.2d at 167. Subsection 775.021(4) was to be treated as an “aid” in determining legislative intent, not as a specific, clear, and precise statement of such intent. To assist in this analysis, courts are to make a subjective determination of whether the two statutory offenses address the “same evil.”
 
 Id.
 
 at 168. The third rule or step is the application of the rule of lenity codified as section 775.021(1), Florida Statutes (1985).[n.4] We recognized that application of the rule of lenity in subsection (1) might lead to a result contrary to that obtained by applying the statutory elements test of the offenses per subsection (4). We opined that the two rules only come into play when there is no specific statement of legislative intent in the criminal offense statute itself, i.e., when there is doubt about legislative intent. Thus we concluded that, by its terms, the rule of lenity controls and prohibits multiple punishments for the two offenses, even if each contains a unique statutory element and are separate offenses under subsection 775.021(4).
 

 [N.4] “(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.” § 775.021(1), Fla. Stat. (1985).
 

 State v. Smith,
 
 547 So.2d 613, 615 (Fla.1989),
 
 superseded by statute,
 
 ch. 88-131, § 7, Laws of Fla. However, during the next legislative session following
 
 Carawan,
 
 the Legislature effectively overruled
 
 Cara-wan
 
 by amending section 775.021(4) to include a specific statement of legislative intent:
 

 (4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
 

 (b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
 

 1. Offenses which require identical elements of proof.
 

 2. Offenses which are degrees of the same offense as provided by statute.
 

 3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
 

 
 *1073
 
 Ch. 88-131, § 7, Laws of Fla. (additions underlined).
 

 In the years since the statutory amendment, we have endeavored to give meaning to subsection (4)(b)(2), such that criminal defendants, defense attorneys, prosecutors, and lower courts can easily interpret this statutory exception to the
 
 Blockburger
 
 test. In
 
 Sirmons v. State,
 
 634 So.2d 153 (Fla.1994), this Court considered whether robbery with a weapon and grand theft of an automobile constituted degree variants of the same core offense under subsection (4)(b)(2). This Court determined that Sirmons’s dual convictions for these offenses, arising out of a single taking of an automobile at knife point, violated double jeopardy. This Court reasoned that the dual convictions were impermissible under subsection (4)(b)(2) because the offenses were aggravated forms of the same underlying core offense of theft, distinguished only by degree factors.
 
 Id.
 
 at 154. In doing so, this Court relied on earlier decisions in which it found that dual convictions for other crimes that were also aggravated forms of theft violated double jeopardy.
 
 See id.
 
 at 153-54 (citing
 
 State v. Thompson,
 
 607 So.2d 422 (Fla.1992);
 
 Johnson v. State,
 
 597 So.2d 798 (Fla.1992)).
 

 Three years later, in
 
 State v. Anderson,
 
 695 So.2d 309 (Fla.1997), this Court held that the prohibition against double jeopardy was violated where the defendant was charged and convicted of both committing perjury in an official proceeding and providing false information in an application for bail, based on a single lie.
 
 Id.
 
 at 310. This Court extended its holding in
 
 Sirmons,
 
 concluding that two offenses can be considered “degree variants” of the same underlying crime, even if they are not denoted in the same statutory chapter.
 
 Anderson,
 
 695 So.2d at 311.
 

 However, in
 
 Gordon v. State,
 
 780 So.2d 17 (Fla.2001), this Court narrowed its holding in
 
 Sirmons
 
 when it approved a decision affirming the defendant’s convictions for attempted first-degree murder, aggravated battery, and felony causing bodily injury:
 

 Extended to its logical extreme, a broad reading of
 
 Sirmons
 
 and the second statutory exception would render section 775.021 a nullity. Indeed, the plethora of criminal offenses is undoubtedly derived from a limited number of “core” crimes. In no uncertain terms, the Legislature specifically expressed its intent that criminal defendants should be convicted and sentenced for every crime committed during the course of one criminal episode. See § 775.021(4)(b). The courts’ exceptions for homicides, which are discussed below, and theft, where the nature of the crime is often defined by degree of the violation, are consistent with the limited statutory exception. However, extension of this exception to multiple convictions for attempted first-degree murder, aggravated battery, and felony causing bodily injury would contravene the plain meaning of section 775.021.
 

 Gordon,
 
 780 So.2d at 23. While emphasizing “the continued viability of the ‘core offense’ construction of the second statutory exception[,]” the Court adopted an approach articulated by Justice Shaw in his dissenting opinion in
 
 Carmvan,
 
 whereby courts must discern what “primary evil” a specific offense is intended to punish to determine whether offenses are degree variants of the same offense.
 
 Gordon,
 
 780 So.2d at 23-24. Justice Shaw noted:
 

 The primary evil of aggravated battery is that it inflicts physical injury on the victim; the primary evil of attempted homicide is that it
 
 may
 
 inflict death, there is no requirement that the state prove any physical injury. The two statutes are not addressed to the same evil. The relationship between aggra
 
 *1074
 
 vated battery and attempted homicide is different than that between aggravated battery and actual, not attempted, homicide.
 

 Carawan,
 
 515 So.2d at 173 (Shaw, J., dissenting). Applying the “primary evil” test in
 
 Gordon,
 
 this Court found that the separate evils of intending to kill (attempted murder), seriously injuring someone (aggravated battery), and injuring someone during the commission of a felony (felony causing bodily injury), are sufficiently different that they warrant separate punishment. 780 So.2d at 23. Thus, the Court concluded that no double jeopardy violation occurred because the offenses were not degree variants of the same underlying offense.
 
 Id.
 
 at 25.
 

 This Court again applied the “primary evil” test in
 
 State v. Florida,
 
 894 So.2d 941 (Fla.2005), to dual convictions for aggravated battery on a law enforcement officer and attempted second-degree murder with a firearm.
 
 [7]
 
 The Court concluded: “The primary evil of aggravated battery is an intentional, nonconsensual touching or striking, whereas the primary evil of attempted second-degree murder is the potential of the defendant’s act to cause death. The evil of battery omits lethal potential, and the evil of attempted second-degree murder omits victim contact.”
 
 Id.
 
 at 949. Based on the offenses’ distinct primary evils, the Court found that the offenses were not degree variants of the same core offense, and thus no double jeopardy violation occurred.
 
 Id.
 

 This Court most recently applied the second statutory exception in
 
 State v. Paul,
 
 934 So.2d 1167 (Fla.2006). There, the Court considered, inter alia, whether the defendant’s dual convictions for lewd and lascivious conduct by rubbing his penis on the victim’s stomach and lewd and lascivious conduct by intentionally exposing his penis to the victim, arising out of the same act, resulted in double jeopardy.
 
 Id.
 
 at 1174.
 
 [8]
 
 Finding that each of the offenses required separate elements that the other did not, the Court proceeded to determine whether any of the statutory exceptions applied.
 
 Id.
 
 at 1174-75. The Court concluded that the first and third exceptions did not apply.
 
 Id.
 
 at 1175. As to the second exception, the Court noted that both offenses stemmed from the same crime of lewd, lascivious, or indecent assault or act upon or in the presence of a child, but found that the crimes were not intended to punish the same evil: “[0]ne forbids lewd or lascivious exhibition; and the other prohibits lewd or lascivious touching.”
 
 Id.
 
 Thus, the Court found that the two crimes were not degree variants of the same core offense and subsection (4)(b)(2) did not apply.
 
 Id.
 

 Justice Cantero wrote a special concurrence in
 
 Paul
 
 in which he expressed his “discomfort” with the Court’s continued reliance on the “primary evil” or “same evil” test articulated in
 
 Carawan,
 
 but abrogated by statutory amendment.
 
 Id.
 
 at 1176 (Cantero, J., specially concurring). Justice Cantero concluded that by looking beyond the statute to determine whether two offenses seek to punish the “same evil,” the majority defied legislative intent because the plain language of the statute does not mention the “same evil” test.
 
 Id.
 
 Rather, the statute “simply prohibits separate punishments for crimes that ‘are degrees of the same offense as
 
 provided by
 
 
 *1075
 

 statute’
 
 ”
 
 Id.
 
 (quoting § 775.021(4)(b)(2), Fla. Stat. (1999)). Therefore, Justice Cantero reasoned, “[t]he Legislature intended] to disallow separate punishments for crimes arising from the same criminal transaction only when the
 
 statute
 
 itself provides for an offense with multiple degrees.” Pa
 
 ul,
 
 934 So.2d at 1176 (Cantero, J., specially concurring).
 

 The dissent in
 
 Paul
 
 asserted that Justice Cantero’s approach came closer to the statutory language than the “primary evil” construction of the second exception, 934 So.2d at 1180 (Pariente, J., concurring in part and dissenting in part), but urged a return to the
 
 Sirmons
 
 line of precedent and an interpretation of the second exception “that exempts from the presumption of multiple convictions those statutory offenses that are degree variants of a common core offense.”
 
 Id.
 
 at 1182. The dissent concluded that the offenses of lewd or lascivious conduct by exhibition and lewd or lascivious conduct by touching “are separate evils within the meaning of
 
 Florida
 
 and
 
 Gordon,
 
 which found battery and attempted murder to be separate evils, but they derive from the same core offense of lewd or lascivious conduct involving children.”
 
 Id.
 
 at 1180.
 

 The Proper Test for Double Jeopardy under Section 775.021(4)(b)(2)
 

 In
 
 Valdes
 
 and
 
 Lopez-Vazquez,
 
 the Third and Fifth Districts applied the “primary evil” test, as set forth in the
 
 Gordon, Flonda,
 
 and
 
 Paul
 
 line of cases, to determine whether a defendant’s dual convictions under sections 790.15(2) and 790.19, arising out of the same episode, violate double jeopardy. Despite the fact that both the Third District and the Fifth District used the same “primary evil” test, the appellate courts reached different conclusions as to what constituted the “primary evil” of each statute. This occurred in part because the “primary evil” is not specifically found in any one source and the Legislature does not define new criminal offenses by stating the “primary evil” the statute addresses. Not only have the district courts struggled with the application of the “primary evil” test, but over the years this Court has also struggled to craft a consistent interpretation that would provide guidance to trial and district courts.
 

 We conclude that the “primary evil” test defies legislative intent because it strays from the plain meaning of the statute.
 
 See Ohio v. Johnson,
 
 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (“Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are ‘multiple’ is essentially one of legislative intent.”);
 
 Anderson,
 
 695 So.2d at 311 (“Legislative intent is the polestar that guides our analysis in double jeopardy issues.... ”);
 
 State v. Sousa,
 
 903 So.2d 923, 928 (Fla.2005) (“The fundamental rule of construction in determining legislative intent is to first give effect to the plain and ordinary meaning of the language used by the Legislature.”). By applying the “primary evil” gloss to the second statutory exception, we have added words that were not written by the Legislature in enacting the double jeopardy exceptions of section 775.021(4) and specifically subsection (4)(b)(2). Rather, this exception simply states that there is a prohibition against multiple punishments for offenses which are “degrees of the same offense.” There is no mention of “core offense” and certainly no mention of “primary evil.” Further, there is no rule of construction that would compel this Court to require such an analysis based on constitutional considerations.
 
 Compare Larimore v. State,
 
 2 So.3d 101, 107 (Fla.2008),
 
 as revised on denial of rehearing,
 
 No. SC06-139 (Fla. Jan. 29, 2009) (“Although Larimore has not raised a constitutional challenge to the Act, because the Act can impose on an individual substantial deprivation of liber
 
 *1076
 
 ty-one that is of indeterminate duration— our construction of the Act must be conducted with due regard to ‘the basic tenets of fairness and due process.’ ”) (quoting
 
 State v. Atkinson,
 
 831 So.2d 172, 174 (Fla.2002)). There is no constitutional prohibition against narrowly interpreting double jeopardy exceptions precisely because there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal episode, as long as the Legislature intends such punishments. See
 
 Hayes,
 
 803 So.2d at 699.
 

 We therefore adopt the approach proposed by Justice Cantero in his special concurrence in
 
 Paul
 
 — an approach we deem to be both easy to apply in practice and deferential to the legislative prerogative inherent in defining crimes and crafting punishments. With these overarching principles in mind, we conclude, as Justice Cantero did in his special concurrence in
 
 Paul,
 
 that the plain meaning of the language of subsection (4)(b)(2), providing an exception for dual convictions for “[offenses which are degrees of the same offense as provided by statute,” is that “[t]he Legislature intends to disallow separate punishments for crimes arising from the same criminal transaction only when the
 
 statute
 
 itself provides for an offense with multiple degrees.” 934 So.2d at 1176 (Cantero, J., specially concurring). “When necessary, the plain and ordinary meaning of words [in a statute] can be ascertained by reference to a dictionary.”
 
 Seagrave v. State,
 
 802 So.2d 281, 286 (Fla.2001). The term “degree” has a plain meaning in this context — “a level based on the seriousness of an offense.”
 
 Black’s Law Dictionary
 
 456 (8th ed.2004). In providing an exception to
 
 Bloclcburger
 
 for those offenses that are degrees of each other, subsection (4)(b)(2) does not mention whether two offenses share a “core offense” or whether two offenses share a “primary evil.” Instead,
 

 The statute itself creates an exception for crimes that “are degrees of the same offense
 
 as provided by statute.”
 
 § 775.021(4)(b)(2), Fla. Stat. (1999) (emphasis added). By its very language, this exception is intended to apply narrowly. It prohibits separate punishments only when a criminal statute provides for variations in degree of the same offense, so that the defendant would be punished for violating two or more degrees of a single offense.
 
 See Sirmons v. State,
 
 634 So.2d 153, 156 (Fla.1994) (Grimes, J., dissenting) (highlighting the phrase “as provided by statute” and concluding that the “Court’s obligation is to apply the statute as it is written”). One example is the theft statute, which expressly identifies three degrees of grand theft and two degrees of petit theft.
 
 See
 
 § 812.014, Fla. Stat. (2005). Another is the homicide statute, which expressly identifies three degrees of murder, as well as multiple forms of manslaughter.
 
 See id.
 
 §§ 782.04, 782.07. Yet another is arson, which has two degrees.
 
 See id.
 
 § 806.01. It is in such cases, and only such cases, that the exception was intended to apply.
 

 Paul,
 
 934 So.2d at 1177-78 (Cantero, J., specially concurring) (footnote omitted). It is not necessary for the Legislature to use the word “degree” in defining the crime in order for the degree variant exception to apply. There are other statutory designations that can evince a relationship of degree-for example, when a crime may have aggravated forms of the basic offense.
 
 See id.
 
 at 1178 n. 5.
 

 We acknowledge that stare deci-sis “counsels us to follow our precedents unless there has been ‘a significant change in circumstances after the adoption of the legal rule, or ... an error in legal analysis.’ ”
 
 Rotemi Realty, Inc. v. Act Realty Co.,
 
 911 So.2d 1181, 1188 (Fla.2005) (quot
 
 *1077
 
 ing
 
 Dorsey v. State,
 
 868 So.2d 1192, 1199 (Fla.2003)). Nonetheless, the presumption in favor of stare decisis may be overcome upon a consideration of the following factors:
 

 (1) Has the prior decision proved unworkable due to reliance on an impractical legal “fiction”? (2) Can the rule of law announced in the decision be reversed without serious injustice to those who have relied on it and without serious disruption in the stability of the law? And (3) have the factual premises underlying the decision changed so drastically as to leave the decision’s central holding utterly without legal justification?
 

 Strand v. Escambia County,
 
 992 So.2d 150, 159 (Fla.2008) (quoting
 
 North Fla. Women’s Health & Counseling Servs., Inc. v. State,
 
 866 So.2d 612, 637 (Fla.2003));
 
 see also State v. Green
 
 944 So.2d 208, 217 (Fla.2006) (“Fidelity to precedent provides ‘stability to the law and to the society governed by that law.’ However, the doctrine ‘does not command blind allegiance to precedent.’ Stare decisis yields ‘when an established rule of law has proven unacceptable or unworkable in practice.’ ”) (citations omitted). We conclude that the factors that favor adherence to precedent are not met in this case, and therefore we recede from our precedent in
 
 Gordon, Florida,
 
 and
 
 Paul,
 
 in which we announced and applied the “primary evil” test. The “primary evil” test has proven unworkable, as evidenced by the difficulty experienced by trial courts, district courts, and this Court in attempting to apply the test. Moreover, abandoning the test will not result in a “serious injustice to those who have relied on it” or cause “disruption in the stability of the law.” The test was first introduced only eight years ago in
 
 Gordon
 
 and represented yet another approach in a long line of conflicting tests set forth to aid interpretation of the second statutory exception. In fact, our decision to recede from this precedent will bring a stability to the law concerning this exception, and to double jeopardy in general, that has been absent for the last twenty years. Also, it will bring such stability in a manner that most comports with legislative intent and the plain meaning of the second statutory exception.
 

 Accordingly, we conclude that the only offenses that fall under subsection (4)(b)(2), are those that constitute different degrees of the same offense, as explicitly set forth in the relevant statutory sections.
 
 [9]
 

 Application of Subsection (4)(b)(2) to the Offenses in this Case
 

 Under the approach we adopt today, dual convictions for the two offenses at issue in this case, discharging a firearm from a vehicle within 1000 feet of a person in violation of section 790.15(2), Florida Statutes, and shooting into an occupied vehicle in violation of section 790.19, Florida Statutes, do not satisfy the second statutory exception because the two offenses are found in separate statutory provisions; neither offense is an aggravated form of the other; and they are clearly not degree variants of the same offense. This is in contrast to sections 790.15(1), 790.15(2), and 790.15(3),
 
 [10]
 
 which are explicitly degree
 
 *1078
 
 variants of the same offense.
 
 [11]
 
 We'thus approve the result reached by the Third District in
 
 Valdes
 
 in concluding that dual convictions for these two offenses do not violate the prohibition against double jeopardy.
 
 [12]
 

 CONCLUSION
 

 Based on the foregoing, we approve the result reached by the Third District in
 
 Valdes,
 
 but not the reasoning, and we disapprove both the result and reasoning in
 
 Lopez-Vazquez.
 

 It is so ordered.
 

 WELLS, CANADY, and POLSTON, JJ., and ANSTEAD, Senior Justice, concur.
 

 QUINCE, C.J., and LEWIS, J, dissent.
 

 [1]
 

 . Valdes was also charged with possession of a firearm by a convicted felon, but that count was severed from the other offenses.
 

 [2]
 

 .
 
 Blockburger v. United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
 

 [3]
 

 . Valdes does not challenge his convictions for attempted second-degree murder in this appeal.
 

 [4]
 

 . Article 1, section 9, of the Florida Constitution provides in pertinent part: “No person shall ... be twice put in jeopardy for the same offense.” Art. I, § 9, Fla. Const. Similarly, the Fifth Amendment to the United States Constitution provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb.” U.S. Const. amend. V.
 

 [5]
 

 . Section 790.15 provides in pertinent part:
 

 790.15 Discharging firearm in public.—
 

 (1) Except as provided in subsection (2) or subsection (3), any person who knowingly discharges a firearm in any public place or on the right-of-way of any paved public road, highway, or street or whosoever knowingly discharges any firearm over the right-of-way of any paved public road, highway, or street or over any occupied premises is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 ors. 775.083....
 

 (2) Any occupant of any vehicle who knowingly and willfully discharges any firearm from the vehicle within 1,000 feet of any person commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
 

 § 790.15, Fla. Stat. (2003). Section 790.19 provides in pertinent part:
 

 790.19 Shooting into or throwing deadly missiles into dwellings, public or private buildings, occupied or not occupied; vessels, aircraft, buses, railroad cars, streetcars, or other vehicles.—
 

 Whoever, wantonly or maliciously, shoots at, within, or into, or throws any missile or hurls or projects a stone or other hard substance which would produce death or great bodily harm, at, within, or in any public or private building, occupied or unoccupied, or public or private bus or any train, locomotive, railway car, caboose, cable railway car, street railway car, monorail car, or vehicle of any kind which is being used or occupied by any person, ... shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or 775.084.
 

 § 790.19, Fla. Stat. (2003).
 

 [6]
 

 . At the time, section 775.021(4) provided only:
 

 
 *1072
 
 Whoever, in the course of one criminal transaction or episode, commits separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
 

 § 775.021(4), Fla. Stat. (1987).
 

 [7]
 

 . These convictions represented lesser-included offenses of the charged crimes of attempted first-degree murder of a law enforcement officer and attempted first-degree murder.
 
 Id.
 
 at 943.
 

 [8]
 

 . The defendant was also convicted of lewd or lascivious molestation by touching the same victim’s genital area and lewd or lascivious conduct by kissing the victim's neck, arising out of a single act briefly preceding the act in question, but in a different room.
 
 Id.
 
 at 1170.
 

 [9]
 

 . We note that when we applied the "primary evil" test in
 
 Gordon, Florida,
 
 and
 
 Paul,
 
 we found that the second statutory exception was not met and therefore double jeopardy did not apply. The same result in those cases would be reached by an application of the plain language of the "degree” exception.
 

 [10]
 

 . Section 790.15 provides in its entirety:
 

 (1) Except as provided in subsection (2) or subsection (3), any person who knowingly discharges a firearm in any public place or on the right-of-way of any paved public road, highway, or street or whosoever knowingly discharges any firearm over the right-of-way of any paved public road, highway, or street or over any occupied premises is guilty of a misdemeanor of the first
 
 *1078
 
 degree, punishable as provided in s. 775.082 or s. 775.083. This section does not apply to a person lawfully defending life or property or performing official duties requiring the discharge of a firearm or to a person discharging a firearm on public roads or properties expressly approved for hunting by the Fish and Wildlife Conservation Commission or Division of Forestry.
 

 (2) Any occupant of any vehicle who knowingly and willfully discharges any firearm from the vehicle within 1,000 feet of any person commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
 

 (3) Any driver or owner of any vehicle, whether or not the owner of the vehicle is occupying the vehicle, who knowingly directs any other person to discharge any firearm from the vehicle commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
 

 [11]
 

 . Numerous examples of degree variants are found throughout Florida Statutes. Many of these examples would satisfy both the second and third statutory exception to the
 
 BLockbur-ger
 
 test, in that they would constitute "degrees of the same offense as provided by statute” (subsection 4(b)(2)) and "lesser offenses the statutory elements of which are subsumed by the greater offense” (subsection 4(b)(3)). However, note that if a defendant received multiple convictions under sections 790.15(1),790.15(2), and 790.15(3), the offenses would satisfy the second statutory exception, but not the third.
 

 [12]
 

 . We note that this case involves a circumstance where, because one criminal act gave rise to multiple separate offenses, double jeopardy is not violated. Thus, the circumstance in this case is distinguishable from cases in which double jeopardy is not a concern because multiple convictions occurred based on two distinct criminal acts.
 
 See Paul,
 
 934 So.2d at 1172 n. 3 ("Of course, if two convictions occurred based on two distinct criminal acts, double jeopardy is not a concern.”) (citing Hayes, 803 So.2d at 700).