LEWIS, J.
Petitioner Pedro Gil seeks review of the decision of the Third District Court of Appeal in State v. Gil, 68 So.3d 999 (Fla. 3d DCA 2011), on the basis that it expressly and directly conflicts with the decisions of other district courts of appeal on a question of law. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
FACTS AND BACKGROUND INFORMATION
On October 6, 2009, Pedro Gil was stopped in Miami-Dade County for speeding. Gil informed the officer that his driver’s license was suspended, and a records search revealed that Gil was a habitual traffic offender.[1] Gil was then arrested. For purposes of this case, the arrest report listed the following charges: driving with a suspended license (DWLS), in violation of section 322.34(2), Florida Statutes (2009), and unlawful driving as a habitual traffic offender (HTO), in violation of section 322.34(5), Florida Statutes (2009). Section 322.34 is titled “Driving while license suspended, revoked, canceled, or disqualified” and provides:
(1) Except as provided in subsection (2), any person whose driver’s license or driving privilege has been canceled, suspended, or revoked, except a “habitual traffic offender” as defined in s. 322.264, who drives a vehicle upon the highways of this state while such license or privilege is canceled, suspended, or revoked is guilty of a moving violation, punishable as provided in chapter 318.
(2) Any person whose driver’s license or driving privilege has been canceled, suspended, or revoked as provided by law, except persons defined in s. 322.264, who, knowing of such cancellation, suspension, or revocation, drives any motor vehicle upon the highways of this state while such license or privilege is canceled, suspended, or revoked, upon:
(a) A first conviction is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
(b) A second conviction is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
(c) A third or subsequent conviction is guilty of a felony of the third degree, *789 punishable as provided in s. 775.082, s. 775.088, or s. 775.084.
[[Image here]]
(5) Any person whose driver’s license has been revoked pursuant to s. 322.264 (habitual offender) and who drives any motor vehicle upon the highways of this state while such license is revoked is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.088, or s. 775.084.
§ 322.34, Fla. Stat. (2009).
On October 27, 2009, Gil pled nolo con-tendere to the misdemeanor DWLS charge in a county court and was adjudged guilty of this charge. Gil was sentenced to six months’ probation and two hundred hours of community service, plus the payment of $358. On the same day, the State Attorney for the Eleventh Judicial Circuit filed an information that charged Gil with a violation of the felony HTO statute. Gil subsequently filed a motion to dismiss the information on the basis that it violated Florida’s double jeopardy statute, section 775.021(4), Florida Statutes (2009), which provides:
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
In support of the claim, Gil relied upon Duff v. State, 942 So.2d 926 (Fla. 5th DCA 2006), in which the Fifth District held that dual convictions under the DWLS statute and the HTO statute violate the “degree variants” principle of double jeopardy under section 775.021(4)(b)(2), Florida Statutes. Id. at 931.
In response to Gil’s motion, the State asserted that the cases relied upon by the Fifth District in Duff had been overruled by this Court in Valdes v. State, 3 So.3d 1067 (Fla.2009). In Valdes, this Court held that “[t]he Legislature intends to disallow separate punishments for crimes arising from the same criminal transaction only when the statute itself provides for an offense with multiple degrees.” Id. at 1076 (quoting State v. Paul, 934 So.2d 1167, 1176 (Fla.2006) (Cantero, J., specially concurring)). According to the State, the crimes of unlawful driving as a habitual traffic offender under section 322.34(5) and driving with a suspended license under section 322.34(2) do not satisfy the second exception delineated in section 775.021(4)(b)(2) because they are located in separate statutory provisions, neither offense is an aggravated form of the other, and the offenses are not degree variants of the same offense.
The circuit court granted Gil’s motion to dismiss the felony information in an order which provided:
*790 [WJhile persuasive, the case of Valdes v. State, 3 So.3d 1067 (Fla.2009) does not necessitate the denial of the Defense’s Motion at issue in this case. The Court’s plain language reading of the two statutes at issue, Fla. Stat. § 322.34(5) and Fla. Stat. § 322.34(2), lead this Court to find that prosecution of the Defendant for both of these charges would violate Fla. Stat. § 775.021(4)(b).
On appeal, the Third District reversed the dismissal of the information. Gil, 68 So.3d at 1003. While acknowledging that the HTO provision, codified in section 322.34(5), appears to be a degree variant of the DWLS provision, codified in section 322.34(2), the Third District nonetheless stated:
Subsection (5) is not a degree variant of subsection (2) because: subsection (2) punishes for driving with a canceled or revoked license, whereas subsection (5) only punishes for driving with a revoked license; subsection (2) requires that the driver have knowledge that his license was canceled, suspended, or revoked, whereas subsection (5) does not require knowledge; and subsection (2) provides for different penalties based on the number of convictions the driver has for violating section 322.34 (sixty days incarceration for a first conviction, 364 days incarceration for a second conviction, and five years incarceration for a third or subsequent conviction), whereas a violation under subsection (5) is punishable up to five years incarceration regardless of the number of times the driver has been convicted for this offense. Additionally, subsection (2) specifically excludes habitual traffic offenders under subsection (5) from its application: “Any person whose driver’s license or driving privilege has been canceled, suspended, or revoked as provided by law, except persons defined in s. 322.264- [the habitual traffic offender statute].... ” § 322.34(2), Fla. Stat. (2009) (emphasis added).
Subsection (5) is also not a degree variant of subsection (2) because a violation of subsection (2) is not a “moving violation,” whereas a violation of subsection (5) is a “moving violation,” see § 322.34(1); and the cancellation, suspension, or revocation of a driver’s license under subsection (2) is based on the number of “points ” a driver has accumulated pursuant to the point system provided in section 322.27 over a certain period of time, whereas subsection (5) is based on the number of convictions for the offenses listed in sections 322.264(1) and (2) over a five-year period.
Id. at 1001-02. The Third District ultimately held that “[b]eeause suspension or revocation under subsection (2) of section 322.34 is based on entirely different conduct and on a completely different criteria than a revocation under subsection (5), subsection (5) cannot be a degree variant of subsection (2), and therefore convictions for violating subsection (2) and subsection (5) do not constitute double jeopardy.” Id. at 1003.
This Court granted review of Gil based upon express and direct conflict with the decisions in Dees v. State, 54 So.3d 644 (Fla. 1st DCA 2011), Duff, 942 So.2d at 926, and Franklin v. State, 816 So.2d 1203 (Fla. 4th DCA 2002). In these cases, the First, Fourth, and Fifth District Courts of Appeal held that dual convictions under sections 322.34(2) and 322.34(5) are prohibited. The Dees and Franklin decisions do not discuss double jeopardy with regard to these statutory subsections, but instead hold that dual convictions are prohibited because subsection (2), by it express terms, does not apply to habitual traffic *791 offenders. Franklin, 816 So.2d at 1204 (“[B]y definition, Franklin cannot be convicted of a violation of s. 322.34(2), which expressly does not apply to persons whose licenses have been revoked pursuant to s. 322.264, i. e., habitual offenders.”); Dees, 54 So.3d at 644 (citing Franklin).
ANALYSIS
We conclude that the decision below must be quashed. Gil cannot be prosecuted under sections 322.34(2) and 322.34(5) for two reasons. First, the plain language of section 322.34 reflects that the crimes delineated in subsections (2) and (5) are mutually exclusive. Second, subsections (2) and (5) constitute variant offenses and, therefore, dual prosecutions of Gil under these provisions would violate the Double Jeopardy Clauses of both the United States and Florida Constitutions.[2]
Mutual Exclusivity
As previously discussed, Gil entered a plea of nolo contendere to the DWLS charge, codified at section 322.34(2), Florida Statutes. This statutory subsection expressly provides that it does not apply to habitual traffic offenders:
(2) Any person whose driver’s license or driving privilege has been canceled, suspended, or revoked as provided by law, except persons defined in s. 322.264 [i.e., habitual traffic offenders], who, knowing of such cancellation, suspension, or revocation, drives any motor vehicle upon the highways of this state while such license or privilege is canceled, suspended, or revoked, upon:
(a) A first conviction is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
(b) A second conviction is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
(Emphasis supplied.) Based on this unambiguous language, we hold that once a person is adjudged guilty for a violation of subsection (2), a subsequent charge under subsection (5) is unauthorized because a habitual traffic offender cannot violate subsection (2). Accordingly, once Gil pled nolo contendere to, and was adjudged guilty of, a violation of subsection (2), the State was foreclosed from thereafter prosecuting him for a violation of subsection (5).
Double Jeopardy
The Double Jeopardy Clause of the Fifth Amendment provides that “[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb.” U.'S. Const, amend. V. Similarly, the Florida Constitution provides that *792 “[n]o person shall ... be twice put in jeopardy for the same offense.” Art. I, § 9, Fla. Const. The scope of the Double Jeopardy Clause is the same under both the United States and Florida Constitutions. Trotter v. State, 825 So.2d 362, 365 (Fla.2002). The United States Supreme Court has held that the Double Jeopardy Clause operates as a restraint on the judiciary from imposing multiple sentences for a single offense where it has not been authorized by the legislative branch:
The Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so. The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress.
Whalen v. United States, 445 U.S. 684, 689, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). The United States Supreme Court has further explained that because the substantive power to define criminal offenses and determine punishments is a legislative prerogative, “the question under the Double Jeopardy Clause whether punishments are ‘multiple’ is essentially one of legislative intent.” Ohio v. Johnson, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); see also Valdes, 3 So.3d at 1075 (quoting Johnson).
The Florida statute that governs double jeopardy is modeled after the test articulated by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[3] Section 775.021, Florida Statutes (2009), provides:
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
The statute expresses the legislative intent that defendants be charged with every offense that arises out of one criminal episode unless an exception applies.
Neither party disputes that subsections 322.34(2) and 322.34(5) each contains an *793 element that the other does not. The DWLS provision requires that the driver know his or her license is suspended, cancelled, or revoked, whereas the HTO provision, subsection (5), contains no knowledge component. The HTO provision requires that the driver be designated a habitual traffic offender, while subsection (2) does not. Accordingly, dual prosecutions for these offenses are not barred under the “same elements” test articulated in subsection 775.021(4)(a).
However, double jeopardy may still attach if subsections 322.34(2) and 322.34(5) satisfy one of the exceptions provided under subsection 775.021(4)(b). As previously discussed, the DWLS and HTO provisions do not require identical elements of proof. Further, driving with a suspended license is not a lesser included offense of unlawful driving as a habitual traffic offender. Instead, the dispositive issue is whether the DWLS offense and the HTO offense are “degrees of the same offense” under subsection (4)(b)(2).
The standard by which Florida courts evaluate whether two statutory offenses are variants of each other — thereby falling under the exception provided in subsection (4)(b)(2) — has evolved over time. In Sir-mons v. State, 634 So.2d 153 (Fla.1994), this Court held that dual prosecutions were prohibited by subsection (4)(b)(2) because the two crimes at issue — robbery with a weapon and grand theft of an automobile — were degree variants of the “core offense” of theft. Id. at 154. In 2001, this Court recognized the continued viability of the “core offense” construction, but adopted an approach requiring courts to determine the “primary evil” a statute is intended to punish to evaluate whether certain crimes are variant offenses for purposes of double jeopardy. Gordon v. State, 780 So.2d 17, 23-24 (Fla.2001); see also State v. Florida, 894 So.2d 941, 949 (Fla.2005) (“The primary evil of aggravated battery is an intentional, nonconsensual touching or striking, whereas the primary evil of attempted second-degree murder is the potential of the defendant’s act to cause death. The evil of battery omits lethal potential, and the evil of attempted second-degree murder omits victim contact. Thus, the two crimes are not merely degree variants of the same core offense, and therefore do not come within the exception ... in section 775.021(4)(b)(2).”).
In 2009, however, the Court concluded that the “primary evil” test was contrary to legislative intent because it strayed from the plain meaning of the double jeopardy statute. Valdes v. State, 3 So.3d 1067, 1075 (Fla.2009). In receding from the “primary evil” test, the Court in Valdes explained:
By applying the “primary evil” gloss to the second statutory exception, we have added words that were not written by the Legislature in enacting the double jeopardy exceptions of section 775.021(4) and specifically subsection (4)(b)(2). Rather, this exception simply states that there is a prohibition against multiple punishments for offenses which are “degrees of the same offense.” There is no mention of “core offense” and certainly no mention of “primary evil.” Further, there is no rule of construction that would compel this Court to require such an analysis based on constitutional considerations.
Id. at 1075. In its place, the Court adopted an approach that tracked the language of the statute. The Court first concluded that the exception was intended to apply narrowly based upon its stated application to crimes that are degrees of the same offense as provided by statute. Id. at 1076. The Court then held that the exception, by its express language, prohibits separate punishments only when a *794 criminal statute provides for variations in degree of the same offense, such that a defendant would be punished for a violation of two or more degrees of a single offense. Id.[4] The Court also concluded that the term “degree” in section 775.021(4)(b)(2) has a plain meaning — “a level based on the seriousness of an offense.” Id. (quoting Black’s Law Dictionary 456 (8th ed. 2004)). At the same time, the Court noted that it is not necessary for the Legislature to use the word “degree” when it defines a crime for the degree variant exception to apply. Id. We explained that other statutory designations can evince a degree relationship, such as when a crime has aggravated forms of the basic offense. Id.
Based upon this standard, the Court in Valdes held that dual convictions for discharging a firearm from a vehicle within 1000 feet of a person, in violation of section 790.15(2), Florida Statutes (2003), and shooting into an occupied vehicle, in violation of section 790.19, Florida Statutes (2003), did not violate double jeopardy. Id. at 1068. According to the Court, these crimes did not qualify as degree variants “because the two offenses are found in separate statutory provisions; neither offense is an aggravated form of the other; and they are clearly not degree variants of the same offense.” Id. at 1077.
Applying the test articulated in Valdes, we conclude that sections 322.34(2) and 322.34(5) qualify as variant offenses under section 775.021(4)(b)(2), Florida Statutes, and double jeopardy precludes the prosecution of Gil under the HTO provision in light of his prior conviction under the DWLS provision based on the same facts. First, unlike Valdes, the two offenses at issue here are located in the same statute, which governs operating a motor vehicle without a valid license. § 322.34, Fla. Stat.
Second, in contrast to the holding in Valdes, we conclude that driving with a suspended license under subsection (2) and unlawful driving as a habitual traffic offender under subsection (5) constitute different degrees of the same offense. Under the Florida Statutes, suspension of a driver’s license is based upon a point system or the commission of certain offenses. Section 322.27, Florida Statutes (2012), which governs driver’s license suspension, provides:
(1) Notwithstanding any provisions to the contrary in chapter 120, the department may suspend the license or identification card of any person without preliminary hearing upon a showing of its records or other sufficient evidence that the licensee or cardholder:
(a) Has committed an offense for which mandatory revocation of license is required upon conviction....;
(b) Has been convicted of a violation of any traffic law which resulted in a crash that caused the death or personal injury of another or property damage in excess of $500;
[[Image here]]
(f) Has committed a second or subsequent violation of s. 316.172(1) [failing to stop for a school bus] within a 5-year period of any previous violation.
[[Image here]]
(3) There is established a point system for evaluation of convictions of violations of motor vehicle laws or ordinances, and violations of applicable provisions of s. 403.413(6)(b) [dumping of litter] when such violations involve the use of motor vehicles, for the de *795 termination of the continuing qualification of any person to operate a motor vehicle....
(a) When a licensee accumulates 12 points within a 12-month period, the period of suspension shall be for not more than 30 days.
(b) When a licensee accumulates 18 points, including points upon which suspension action is taken under paragraph (a), within an 18-month period, the suspension shall be for a period of not more than 3 months.
(c) When a licensee accumulates 24 points, including points upon which suspension action is taken under paragraphs (a) and (b), within a 36-month period, the suspension shall be for a period of not more than 1 year.
(d) The point system shall have as its basic element a graduated scale of points assigning relative values to convictions of the following violations:
1. Reckless driving, willful and wanton — 4 points.
2. Leaving the scene of a crash resulting in property damage of more than $50 — 6 points.
3. Unlawful speed resulting in a crash — 6 points.
4. Passing a stopped school bus — 4 points.
5. Unlawful speed:
a. Not in excess of 15 miles per hour of lawful or posted speed — 3 points.
b. In excess of 15 miles per hour of lawful or posted speed — 4 points.
6. A violation of a traffic control signal device as provided in s. 316.074(1) or s. 316.075(l)(c)l. — 4 points_
7. All other moving violations (including parking on a highway outside the limits of a municipality) — 3 points....
8. Any moving violation covered above, excluding unlawful speed, resulting in a crash — 4 points.
9. Any conviction under s. 403.413(6)(b) — 3 points.
10. Any conviction under s. 316.0775(2) [possession of traffic signal preemption device] — 4 points.[5]
[[Image here]]
(5) The department shall revoke the license of any person designated a habitual offender, as set forth in s. 322.264, and such person is not eligible to be relicensed for a minimum of 5 years from the date of revocation, except as provided for in s. 322.271.
A review of the habitual traffic offender statute demonstrates that a number of the offenses detailed in section 322.27 serve as predicates for qualifying a person as a habitual traffic offender. Further, the DWLS provision in section 322.34(2) constitutes a predicate offense as well:
A “habitual traffic offender” is any person whose record, as maintained by the Department of Highway Safety and Motor Vehicles, shows that such person has accumulated the specified number of convictions for offenses described in subsection (1) or subsection (2) within a 5-year period:
(1) Three or more convictions of any one or more of the following offenses arising out of separate acts:
(a) Voluntary or involuntary manslaughter resulting from the operation of a motor vehicle;
*796 (b) Any violation of s. 316.193 [driving under the influence], former s. 316.1931, or former s. 860.01;
(c) Any felony in the commission of which a motor vehicle is used;
(d) Driving a motor vehicle while his or her license is suspended or revoked;
(e) Failing to stop and render aid as required under the laws of this state in the event of a motor vehicle crash resulting in the death or personal injury of another; or
(f) Driving a commercial motor vehicle while his or her privilege is disqualified.
(2) Fifteen convictions for moving traffic offenses for which points may be assessed as set forth in s. 322.27, including those offenses in subsection (1).
§ 322.264, Fla. Stat. (2012) (emphasis supplied). Thus, upon three convictions of driving with a suspended or revoked license within a five-year period, a driver not only qualifies as a habitual traffic offender under section 322.264, but revocation of his or her license is mandatory. § 322.27(5), Fla. Stat. (“The department shall revoke the license of any person designated a habitual offender....” (emphasis supplied)). Moreover, while a certain number of points assessed against a driver within twelve, eighteen, or twenty-four months can lead to license suspension under section 322.27(3), fifteen convictions under the same point system within a five-year period leads to mandatory license revocation as a habitual traffic offender. §§ 322.264(2), 322.27(5), Fla. Stat. Therefore, the statement by the Third District in the decision below that “suspension or revocation under subsection (2) of section 322.34 is based on entirely different conduct and on a completely different criteria than a revocation under subsection (5)” is not correct. Gil, 68 So.3d at 1003 (emphasis supplied).
The Florida Legislature has chosen to penalize habitual traffic offenders — drivers who have been convicted of specified offenses multiple times within a five-year period — more severely by revoking their licenses for a mandatory term of five years rather than using a sliding scale of punishment like that employed in section 322.27(3) for drivers who are not habitual traffic offenders. Thus, when a habitual traffic offender drives with a revoked license in violation of section 322.34(5), we conclude that it is a higher degree offense than when a person who is not a habitual traffic offender drives with a cancelled, suspended, or revoked license in violation of section 322.34(2). The penalties for the two offenses support this conclusion. For a first or second conviction under the DWLS provision, the offense constitutes only a misdemeanor. § 322.34(2)(a)-(b), Fla. Stat. Only upon a third conviction does the DWLS provision share the same level of severity as the HTO provision — a third-degree felony. § 322.34(2)(c), (5) Fla. Stat.[6]
Our conclusion that unlawful driving as a habitual traffic offender is a more serious offense than driving with a cancelled, suspended, or revoked license is supported by the legislative history of the interplay between these two offenses. Prior to 1997, under certain circumstances the HTO provision carried a less severe penalty than the DWLS provision. See § 322.34, Fla. Stat. (1995). In an earlier version of the statute, a third or subsequent violation of the DWLS provision was prosecuted as a third-degree felony, but a *797 first violation of the HTO provision was prosecuted as only a first-degree misdemeanor. This created an illogical result, which was recognized in State v. Harvey, 693 So.2d 1009 (Fla. 4th DCA 1997).
In Harvey, the defendant, who was a habitual traffic offender, was charged under the earlier DWLS provision with felony driving while license suspended or revoked. Id. at 1010. The trial court dismissed the felony information, but allowed the State ten days to charge the defendant with a misdemeanor under the HTO provision. Id. The Fourth District affirmed the dismissal on the basis that the DWLS provision of section 322.34 did not apply to habitual traffic offenders. Id. at 1009-10. The State challenged the outcome — that the defendant would only face a misdemeanor charge under the HTO provision instead of a felony charge — but the district court stated that it could not change the law:
Although it may seem inconsistent that once declared a habitual traffic offender, the offender can be charged on a first conviction only with a first degree misdemeanor, whereas if the offender had not been declared such, a felony charge could be brought, the punishment scheme is not absurd, considering the lengthy license revocation which accompanies the habitual traffic offender designation.
The state’s arguments are more appropriately addressed to the Legislature which may wish to revisit this statute and change the penalties. As it is written, it is unambiguous, and the court can only enforce it as written.
Id. at 1011 (emphasis supplied).
Notwithstanding the suggestion of the Fourth District, prior to Harvey the Florida Legislature was already considering the incongruity between the HTO and the DWLS provisions. A Senate Staff Analysis and Economic Impact Statement dated March 7, 1997, discussed a proposed amendment to section 322.34 that was eventually adopted by the Florida Legislature:
The bill further amends [section 322.34] to provide that any person whose license has been revoked for being a Habitual Traffic Offender pursuant to s. 322.264 and who knowingly drives with a revoked license is guilty of a third degree felony. This eliminates the inconsistency in current law that allows someone with three or more convictions in a five year period for driving on a suspended, canceled, or revoked license to get more lenient treatment than another person with the same number of convictions over a seven year period.
Fla. S. Comm, on Transp., CS/SB 1002 (1997) Staff Analysis 5 (Mar. 7, 1997) (emphasis supplied).[7] Shortly after the decision in Harvey was issued, the Florida Legislature revised section 322.34(5) to make any violation of the HTO provision a third-degree felony. Ch. 97-300, § 40, at 5414, Laws of Fla. The Legislature’s decision in 1997 to make unlawful driving as a habitual traffic offender always a felony offense demonstrates that this crime is of a more serious degree than driving with a cancelled, suspended, or revoked license.
Based upon the overlap and interaction (both current and prior) between the HTO and the DWLS provisions — the two offenses are located in the same statute; three convictions under subsection (2) within a five-year period qualifies a driver as a habitual traffic offender; the decision of the Florida Legislature to amend section 322.34 so that a violation of the HTO provision is always a felony, whereas a *798 violation of the DWLS provision may be a misdemeanor or a felony depending on the number of prior convictions received by the driver — we conclude that subsections (2) and (5) of section 322.34 constitute degrees of the same offense, as that phrase was most recently construed in Valdes.
In this case, Gil was adjudged guilty of and sentenced for a violation of section 322.34(2). The State cannot now charge him under subsection (5) because to do so would violate the principles of double jeopardy under the degree variant exception of section 775.021(4)(b)(2). Accordingly, we conclude that the trial court properly granted the motion to dismiss the felony information.
CONCLUSION
In light of the foregoing, we hold that dual prosecutions under subsections (2) and (5) of section 322.34 are both statutorily and constitutionally prohibited. The decision of the Third District in Gil is quashed, and the decisions in Dees, Duff, and Franklin are approved to the extent they are consistent with our holding today.
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J., and CANADY, J., concur in result.

. Section 322.27(5), Florida Statutes (2012), states: "The [Department of Highway Safety and Motor Vehicles] shall revoke the license of any person designated a habitual offender, as set forth in s. 322.264, and such person is not eligible to be relicensed for a minimum of 5 years from the date of revocation, except as provided for in s. 322.271.”

. The State relies upon Staten v. State, 519 So.2d 622 (Fla. 1988), for the proposition that mutually exclusive statutes do not implicate principles of double jeopardy. However, Staten does not control our decision today. In Staten, the Court held that an individual cannot be convicted as both a principal and an accessory after the fact based on the same criminal act because the crimes are mutually exclusive. Id. at 623, 625. In reaching this conclusion, the Court only cursorily stated that "double jeopardy is not implicated here ” and referenced three decisions without elaboration or analysis. Id. at 625 (emphasis supplied). The Court then explained that whether dual convictions under the principal and accessory offenses are permissible would be based “solely on [a] construction of the crime of being an accessory after the fact.” Id. (emphasis supplied). The Court did not explain why principles of double jeopardy were not implicated, and it certainly did not broadly hold that dual convictions under mutually exclusive statutes can never implicate double jeopardy. Further, Staten did not involve the unique procedural posture presented by this case, i.e., Gil, a habitual traffic offender, was charged with and pled guilty to an offense that was inapplicable to him, and he was only later charged under the correct statute.

. The test articulated in Blockburger, sometimes referred to as the "same elements” test, provides "[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.” 284 U.S. at 304, 52 S.Ct. 180 (quoting Morey v. Commonwealth, 108 Mass. 433, 434 (1871)).

. The Court provided as an example the arson statute, which identifies two degrees of arson. 3 So.3d at 1076; see also § 806.01, Fla. Stat. (2012).

. A driver's license may also be suspended for non-traffic violations. See, e.g., § 322.245, Fla. Stat. (2012) (failure to pay child support).

. Further, if a third conviction under the DWLS provision occurs within a five-year period, the driver will be designated as a habitual traffic offender, which entails a mandatory five-year license revocation under section 322.27(5). See 322.264(l)(d), Fla. Stat.

. The Fourth District issued its decision in Harvey on April 9, 1997.