# Third District Court of Appeal

## State of Florida

Opinion filed December 20, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-709
Lower Tribunal No. 12-7548B

_____

**Oba Newbhard,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Maria Elena Verde, Judge.

Carlos J. Martinez, Public Defender, and Marti Rothenberg and Jeffrey Paul DeSousa, Assistant Public Defenders, for appellant.

Pamela Jo Bondi, Attorney General, and Jonathan Tanoos, Assistant Attorney General, for appellee.

Before SALTER, EMAS and LOGUE, JJ.

EMAS, J.

**INTRODUCTION**

Oba Newbhard was convicted by a jury of the crimes of attempted felony-murder, robbery with a firearm, and aggravated assault (two counts). In this appeal, Newbhard contends that the trial court erred in denying his motion for judgment of acquittal on the charge of attempted felony-murder because the State relied upon the same act to prove both the attempted felony-murder and the underlying robbery offense. We affirm, because the State established at trial that the attempted felony-murder included an intentional act that was not an essential element of the underlying robbery offense.

**FACTS**

The evidence at trial, in a light most favorable to upholding the jury's verdict, established the following:

On the night of March 21, 2012, David Montesino, his girlfriend Janette Garcia, and their six-year old daughter were leaving their third-floor apartment to get something to eat. Montesino began walking down the stairs with his daughter, with Garcia not far behind. When Montesino reached the bottom of the stairs and began walking towards his car, he was approached by Newbhard, who was pointing a gun at him and demanding Montesino hand over the gold chain around Montesino's neck. Montesino took several steps back, at which time Newbhard grabbed Montesino's daughter, pointed the gun to her head, and demanded that

Montesino hand over his chain. When Montesino confronted Newbhard, Newbhard released the daughter.

By this point, Garcia had reached the bottom of the stairs, and Newbhard grabbed Garcia and pointed the gun to her head, again demanding that Montesino hand over his chain. Montesino agreed to give Newbhard his chain and, as he took off the chain and held it in his hand, Newbhard released Garcia.

Newbhard and Montesino continued to argue and, during this time, Montesino knocked Newbhard's hat off his head, allowing Montesino a clear view of Newbhard's face. Thereafter, Montesino began to run, but Newbhard shot Montesino twice—once in the hand and once in the leg. After Montesino was shot, and while still running away from Newbhard, Montesino threw his gold chain at Newbhard. Newbhard then fled the scene with Montesino's gold chain. Montesino survived his injuries, and both he and Garcia identified Newbhard as the perpetrator.

Newbhard was arrested and charged by amended information with, *inter alia*, armed robbery of Montesino; attempted felony-murder with a deadly weapon upon Montesino; aggravated assault with a firearm upon the daughter; and aggravated assault with a firearm upon Garcia.

Following a jury trial, Newbhard was convicted of all counts. The trial court adjudicated Newbhard guilty and sentenced him to life in prison on the armed

robbery and the attempted felony-murder and to five years in prison for each aggravated assault, all sentences to run concurrently.[1] This appeal follows.

## ANALYSIS

We look first to the relevant language of the felony-murder and robbery statutes, as well as the allegations contained in the information. We then consider the evidence presented at trial to determine whether, as Newbhard asserts, the State relied upon the same intentional act in proving both the felony-murder and the underlying robbery offense.

The attempted felony-murder statue provides in relevant part:

> Any person who perpetrates **or attempts to perpetrate** any felony enumerated in s. 782.04(3)[2] and who commits, aids, or abets an intentional act that is not an essential element of the felony and that could, but does not, cause the death of another commits a felony of the first degree . . . .

§ 782.051(1), Fla. Stat. (2012).

The robbery statute provides in relevant part:

> (1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or

---

[1] Newbhard was also charged with possession of a firearm by a convicted felon. The court severed that count for trial and, following the trial and convictions on the above-described counts, Newbhard entered a plea to this remaining charge and was sentenced to a three-year mandatory minimum sentence, to run concurrent with the sentences for the other counts.

[2] Robbery is an enumerated felony. See § 782.04(3)(d), Fla. Stat. (2012).

4

the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

. . .

(2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.

. . .

(3)(b) An act shall be deemed "in the course of the taking" if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.

§ 812.13, Fla. Stat. (2012).

Count Six of the information, charging Newbhard with attempted felony-murder, alleged that Newbhard

did, by an act imminently dangerous to another and evincing a depraved mind regardless of human life, while engaged in the perpetration of, **or in attempt to perpetrate**, **robbery**, **and did commit**, aid, or abet **an intentional act that is not an essential element of the felony** and that could, but does not, cause the death of another, to wit: DAVID MONTESINO, **by SHOOTING AT HIM**, and during the course of the commission of the offense, said defendant discharged a firearm or destructive device, and as a result of the discharge, death or great bodily harm was inflicted upon DAVID MONTESINO, a human being and in the commission of said felony, the defendant carried, displayed, used, threatened, or attempted to use

5

a weapon, to wit: A FIREARM in violation of s. 782.051(1) and s. 775.087, Fla. Stat. . . . . (Emphasis added).

Importantly, and as the highlighted portion above shows, the State alleged, as the underlying felony, robbery or attempted robbery.

Count Two, charging robbery, alleged that Newbhard

did unlawfully, by force, violence, assault, or putting in fear, take certain property, to wit: A NECKLACE AND/OR PENDANT. . ., the property of DAVID MONTESINO, with the intent to temporarily or permanently deprive the above-named owner(s) or custodian(s) of the said property, and/or during the course of the commission of the offense, said defendant discharged a firearm or destructive device, and as a result of the discharge, death or great bodily harm was inflicted upon DAVID MONTESINO. . . .

In order to prove the crime of robbery, the State had to establish that "in the course of the taking there is the use of force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. To constitute robbery under the statute, it is not necessary to prove that the use of force was precisely contemporaneous with the taking itself. Instead the use of force will support a robbery conviction if it "occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it [the use of force, violence, assault or putting in fear] and the act of taking constitute a continuous series of acts or events." § 812.13(3)(b).

Newbhard asserts that the shooting of the firearm—i.e., the "intentional act" relied upon for the felony-murder charge—also constituted the "use of force, violence, assault or putting in fear" for the underlying robbery. Newbhard points to the fact that the robbery was not

6

completed (that is, Montesino did not give up the gold chain) until after Newbhard shot Montesino. Therefore, Newbhard argues, the act of shooting Montesino with a firearm constituted the use of force "in the course of the taking" and therefore could not simultaneously be relied upon by the State as the intentional act necessary to support a conviction for felony-murder. Newbhard argues that his conviction and sentence for attempted felony-murder must therefore be reversed.

The State counters that the evidence at trial established that Newbhard engaged in <u>multiple acts</u>, any one of which could serve to satisfy the use of force element of robbery. The State is correct that the evidence at trial established that Newbhard engaged in multiple acts involving the use of force. For example:

- When Newbhard initially pointed the gun at Montesino and demanded that he hand over his gold chain;

- When Newbhard later grabbed Montesino's daughter, pointed the gun to her head, and demanded Montesino hand over his chain; and

- When Garcia reached the bottom of the stairs, Newbhard grabbed Garcia, pointed the gun to her head, and demanded Montesino hand over his chain.

Any one of these acts, standing alone, was sufficient to satisfy the robbery statute's requirement that "in the course of the taking there is the use of force, violence, assault, or putting in fear."

The infirmity in Newbhard's argument is that it overlooks one important point: in order to prove attempted felony-murder, the State was not required to

7

establish that Newbhard *successfully* completed the underlying robbery; rather, the attempted felony-murder offense could be established by proof that Newbhard committed *or attempted to commit* the underlying robbery.  See § 782.051(1), Fla. Stat. (2012) (providing: "Any person who perpetrates <u>or attempts to perpetrate</u> any felony enumerated in s. 782.04(3) . . . .").

Thus, in establishing the crime of attempted felony-murder, the use of force element of the underlying felony (robbery <u>or</u> attempted robbery) was established by proof that Newbhard pointed a gun at Montesino and demanded his gold chain; <u>or</u> by proof that Newbhard grabbed the daughter and pointed a gun to her head and demanded the chain; <u>or</u> by proof that Newbhard grabbed Garcia and pointed a gun to her head and demanded the chain.  The fact that Newbhard did not succeed in obtaining the chain as a result of any one of these acts is irrelevant to proof of the attempted robbery as the underlying offense of attempted felony-murder.

In similar fashion, the fact that Newbhard later used force, violence, assault or putting in fear against Montesino—by shooting Montesino and thereafter obtaining possession of the gold chain—is not essential to proving that Newbhard, while attempting to perpetrate a robbery, committed the additional intentional act of shooting Montesino.[3]

---

[3] To adopt Newbhard's reasoning would appear to produce this anomalous result: where the defendant managed to successfully complete the robbery and obtain the property by shooting the victim, the defendant <u>could not be</u> convicted of attempted felony-murder.  However if, even after shooting the victim, the defendant was still unable to obtain the victim's property, the defendant <u>could be</u> convicted of

Newbhard relies for his position on <u>Milton v. State</u>, 161 So. 3d 1245 (Fla. 2014). In <u>Milton</u>, the defendant fired multiple gun shots at a crowd of people standing in front of a house. The defendant was charged with, *inter alia*, three counts of attempted felony-murder (involving three separate victims), and the underlying felony alleged for each of these counts was attempted second-degree murder. For each of these counts, the same individual constituted the victim of both the attempted felony-murder and the underlying attempted second-degree murder. <u>Id.</u> at 1246. The State alleged that the intentional act—which could have resulted in each victim's death but was not an essential element of the underlying attempted second-degree murder—was Milton's act of discharging a firearm. <u>Id.</u> at 1247. Relevant to our discussion, Milton was convicted of three counts of attempted felony-murder. This court affirmed those convictions.

On appeal to the Florida Supreme Court, the defendant in <u>Milton</u> argued that because the discharge of a firearm was the only act that could satisfy an essential element of the attempted second-degree murder (intentionally committing an act that could have resulted, but did not result in, the victim's death),[4] this same act

_____

attempted felony-murder.

[4] <u>See</u> <u>State v. Florida</u>, 894 So. 2d 941, 945-46 (Fla. 2005) (receded from on other grounds by <u>Valdes v. State</u>, 3 So. 3d 1067 (Fla. 2009)) (holding that an essential element of attempted second-degree murder is that "the defendant intentionally committed an act that could have resulted, but did not result, in the death of someone").

9

could not also be relied upon as the "intentional act" necessary to prove the attempted felony-murder.

The State countered that because the defendant fired multiple gun shots, only the initial shot was an essential element of the underlying attempted second-degree murder, and the subsequent shots fired by Milton were not an essential element of the underlying felony. The Supreme Court rejected the State's argument, holding that "Milton's single act of discharging a firearm did not satisfy the 'intentional act' element of attempted felony murder, as it was an essential element of the underlying attempted second-degree murder." Id. at 1250. The Court vacated the attempted felony-murder conviction.

Milton is distinguishable, given that the underlying felony in that case was attempted second-degree murder, and given the Court's determination that the multiple discharges of the firearm constituted a single act. Under those particular facts, the act of discharge was an essential element of both the attempted felony murder and the attempted second-degree murder. No such facts or circumstances are present in the instant case.

Newbhard's reliance on Coicou v. State, 867 So. 2d 409 (Fla. 3d DCA 2003) (quashed on other grounds, 39 So. 3d 237 (Fla. 2010)), is similarly misplaced. In Coicou, a meeting was arranged at which an individual named Artis was going to buy cocaine from Coicou. When the two met up, Artis handed his money to Coicou. After counting the money,

10

Coicou showed Artis the cocaine. When Artis asked to sample the drugs, Coicou pulled out a gun, shot Artis, and left the scene with the buyer's money. Artis survived, and Coicou was charged with attempted first-degree felony-murder. The underlying felony alleged was robbery. Coicou was convicted and, on appeal, this court reversed the conviction for attempted first-degree felony murder, holding:

> Here, Coicou took Artis' money. Artis testified that he voluntarily handed the money to Coicou. The use of force occurred after Artis handed the money to Coicou The use of force, the shooting, was itself an essential element of the underlying robbery and was not an independent act as required by section 782.051(1). It follows then that the robbery offense could not also be considered for the attempted felony murder charge. Without this additional proof of force, the State failed to prove the main charge against Coicou, the attempted felony murder charge. Thus, the trial court erred in denying Coicou's motion for judgment of acquittal.
>
> (Internal citations omitted.)

In Coicou, a single act of force was used to effectuate both the robbery and the attempted murder. Here, by contrast, the defendant engaged in a separate and discrete use of force, violence, assault or putting in fear against three different individuals in attempting to commit the underlying robbery.

The instant case is instead analogous to Williams v. State, 182 So. 3d 11 (Fla. 3d DCA 2015)(en banc), in which we held, on facts and charges indistinguishable in all relevant respects to the instant case, that "the later act of shooting the victim in the abdomen is an intentional act separate and distinct from

11

that of pointing the firearm at the victim's head and demanding that she hand over her bag." Id. at 15.

As in Williams, Newbhard's actions of pointing the gun at Montesino and demanding the gold chain; later grabbing the daughter and pointing the gun at her head while demanding the chain; and still later then turning the gun on Garcia while demanding the chain, are separate and distinct acts, any one of which would alone suffice to establish the use of force element for the underlying attempted robbery. The fact that Newbhard later shot Montesino, and by the use of such force was able to successfully complete the robbery, did not serve to convert that subsequent act of shooting into an essential element of the underlying attempted robbery.

Affirmed.

12