# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————————

No. 1D16-4651

———————————————————

KEITH MATTHEW MCCRAY,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

———————————————————

On appeal from the Circuit Court for Bay County.
Michael C. Overstreet, Judge.

January 22, 2019

WINSOR, J.

Keith McCray appeals his convictions and sentences for armed robbery, attempted armed robbery, and attempted felony murder. We affirm McCray's convictions but remand with instructions to correct sentencing errors.

Paula Trupp found a sectional couch on Craigslist for $1300. She coordinated with the couch's purported owner—Kayla Brown—to go have a look. Trupp and her daughter went to Kayla's, where they discovered the couch was in worse shape than advertised. Trupp left, telling Kayla she'd have to think about it.

Trupp and her daughter then went to Burger King to mull things over. While they were there, Kayla repeatedly called Trupp,

each time lowering the asking price. Kayla and Trupp finally settled on $800.

Later that afternoon, Trupp's daughter went with her friend Tipton to Kayla's apartment. But they did not leave with the couch as planned. Instead, they were robbed. Two men ran toward them, yelling "get the f*** down." One man pushed Trupp's daughter against a wall and demanded money. He also hit Tipton in the head with a baseball bat, and the other man put a gun to Tipton's head and pulled the trigger. The gun malfunctioned and did not fire. After a second attempt to shoot Tipton, and after the gun again malfunctioned, the two men fled.

Kayla was implicated in the robbery and agreed to a plea deal. She testified that McCray coordinated with her to rob Trupp's daughter and Tipton when they returned for the couch. Kayla and Tipton both testified that McCray was the man who tried to shoot Tipton.

McCray was convicted of all charges, and the jury found he actually possessed a firearm. The court sentenced him to thirty-five years' imprisonment followed by fifteen years' probation, and it imposed various costs and fines. McCray now appeals, raising three arguments. We address each in turn.

McCray first argues that his conviction for attempted felony murder cannot stand because his use of the gun extended throughout the underlying felony (the robbery) and therefore no intentional act separated the robbery from the attempted felony murder. *See* § 782.051(1), Fla. Stat. (2016) (establishing that attempted felony murder requires an act that could have caused death and that is not an "essential element" of the underlying felony). In other words, McCray argues, his act of putting a gun to Tipton's head and pulling the trigger was an "essential element" of the robbery. We reject this argument.

McCray relies primarily on *Milton v. State*, 161 So. 3d 1245 (Fla. 2014). In *Milton*, the defendant shot into a crowd and faced several counts of attempted felony murder, each of which was predicated on the underlying felony of attempted second-degree murder. The State contended the act of shooting was not an "essential element" of the attempted-murder charge and could

2

therefore support the attempted felony murder charge. The Florida Supreme Court held, though, that the "single act of discharging a firearm" *was* an essential element of the underlying attempted-murder charge, meaning it "did not satisfy the intentional act element of attempted felony murder." *Id.* at 1250 (marks omitted). In other words, but for Milton's shooting, there would have been no attempted murder, so his shooting was an essential element. And that meant the State could not satisfy its burden to show—as an element of attempted felony murder—"an intentional act that is not an essential element of the felony." § 782.051(1).

But our case is unlike *Milton*. Here, even had McCray not pulled the trigger, he was guilty of robbery. No shooting (or attempted shooting) is necessary for the crime of robbery. All the State must show is a taking through "use of force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. We cannot conclude, then, that McCray's attempt to shoot his victim in the head was an "essential element" of the predicate offense of robbery. *See Newbhard v. State*, 237 So. 3d 1075, 1080 (Fla. 3d DCA 2017) ("The fact that [defendant] later shot [the victim], and by the use of such force was able to successfully complete the robbery, did not serve to convert that subsequent act of shooting into an essential element of the underlying attempted robbery."); *Dallas v. State*, 898 So. 2d 163, 165 (Fla. 4th DCA 2005) ("[W]e conclude that the evidence of shooting the victim was not an element of the attempted robbery. . . .") (distinguishing *Milton*); *see also Williams v. State*, 182 So. 3d 11, 15 (Fla. 3d DCA 2015) ("[T]he later act of shooting the victim in the abdomen is an intentional act separate and distinct from that of pointing the firearm at the victim's head and demanding that she hand over her bag. This allegation satisfies the 'not an essential element of the felony' requirement of the attempted felony murder statute quoted above." (citation omitted)).

McCray's second argument is related to his pre-trial competency proceedings. After McCray's arrest, his counsel moved for a competency evaluation. A mental health expert subsequently evaluated McCray and produced a report finding him competent to proceed. During a preliminary hearing, McCray's counsel presented the report to the court and asked for a ruling. ("I think

the State is prepared to stipulate to that report, so we need a finding of competency as we move forward.") The court, having received the report and having heard the parties' stipulations, announced that it found McCray competent "based on the report and the State's stipulation."

McCray argues this was fundamental error because the trial court never actually considered the report. The State confessed error on this point, but we find no error. *See Perry v. State*, 808 So. 2d 268, 268 (Fla. 1st DCA 2002) (appellate courts are under no obligation to accept confessions of error).

As McCray correctly notes, a court cannot find competency based on the parties' stipulation alone. *See Sheheane v. State*, 228 So. 3d 1178, 1180 (Fla. 1st DCA 2017) ("The *court* must make an independent finding of competence or incompetence—stipulations of competence are not permitted." (citing *Zern v. State*, 191 So. 3d 962, 964 (Fla. 1st DCA 2016))). But here the court said it *was* relying on the expert report, not just a stipulation.

Judge Wolf speculates that the court may not have *truly* read the report. But we have no basis to suppose that the court did anything but what it said it did: base its finding on the report. *See Merriell v. State*, 169 So. 3d 1287, 1288 (Fla. 1st DCA 2015) (rejecting argument that court did not make independent competency determination when court "had the competency evaluation . . . stated that it had reviewed the evaluation, and specifically stated that it was finding Appellant competent to proceed."). We cannot determine from the transcript precisely how long the court had the report, but we will not assume the court took too little time to digest the relatively short and straightforward report.[*]

---

[*] This is not like *Rosier v. State*, 43 Fla. L. Weekly D2042 (Fla. 1st DCA Sept. 5, 2018), *reh'g en banc granted*, 1D16-2327 (Jan. 8, 2019), in which this court found a competency hearing inadequate and "perfunctory." In that case, which was highly fact-specific, "the evaluation report went unmentioned throughout the hearing, the trial judge neither discussing it nor stating she'd reviewed it." *Id.* The order at issue included no indication "that the judge actually

4

Although the court did not err in finding competency, it did neglect to put its oral ruling in writing. We therefore remand for entry of a written order. *See Nehring v. State*, 225 So. 3d 916, 917 (Fla. 1st DCA 2017) (holding that when trial court makes oral competency finding but neglects to enter written order, appellate court is to remand for entry of written order consistent with oral ruling).

Finally, McCray argues that his sentence included court costs for domestic violence, the rape crisis fund, and the crime stopper trust fund, none of which was permissible. The State properly confesses error on these points, and we reverse these costs. Additionally, the court should correct McCray's written order of probation to match the court's orally pronounced sentence, which did not include probation or restitution for count two. McCray's sentence is otherwise affirmed.

AFFIRMED in part, REVERSED in part, and REMANDED with instructions.

OSTERHAUS, J., concurs; WOLF, J., concurs in part and dissents in part with opinion.

––––––––––––––––––––––––––

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

––––––––––––––––––––––––––

WOLF, J., concurring in part and dissenting in part.

I concur in all respects with the majority opinion except for one. I dissent from that portion of the opinion that suggests the trial court made an independent finding of appellant's competency. The State correctly concedes error because the record does not clearly reflect that the trial court did anything more than accept the parties' stipulation without conducting an independent

reviewed or relied on [the competency evaluation]." *Id.* Here, the judge was clear: he ruled "based on the report."

evaluation of the psychiatric report regarding appellant's competency. The record states counsel handed the court the evaluation "a moment" before the court found appellant competent to proceed. I would, therefore, reverse and remand for the trial court to conduct a nunc pro tunc competency determination. In light of the fact that we are remanding for entry of a written order, there is no reason that we should not require the trial judge to clarify whether there was a proper independent evaluation.

Prior to the trial, defense counsel filed a motion for examination to determine competency. The court granted the motion. A doctor conducted a psychological evaluation and submitted a report concluding that appellant was competent. Subsequently, the court conducted a brief pretrial hearing. At the outset of the hearing, defense counsel had a conversation with the clerk that appears to have been about the competency evaluation. The clerk asked, "do you have another copy or do you want me to give this to him?" Defense counsel stated, "Yeah, if you'd give him a copy, unless he wants to read it on the screen. I'm not sure if it's made it through yet." The clerk responded, "We haven't." Defense counsel then explained to the court, "there was a suggestion of incompetency. The examination's been completed. The report is what was *just handed to you a moment ago*. It determined he is competent. I think the State is prepared to stipulate to that report, so we need a finding of competency as we move forward." (Emphasis added). The court responded, "Based on the report and the State's stipulation, [appellant] is found to be competent. . . ."†

---

† [PROSECUTOR]: Judge, Mr. McCray is out if [defense counsel is ready.

THE COURT: Okay.

THE CLERK: Do you want me to give this, do you have another copy or do you want me to give this to him?

[DEFENSE COUNSEL]: Yeah, if you'd give him a copy, unless he wants to read it on the screen. I'm not sure if it's made it through yet.

6

The record thus indicates that the trial court did not have a copy of the report prior to the hearing. The report, which contained 7 pages of single-spaced text, was handed to the judge just "a moment" before counsel requested a ruling. The court ruled immediately thereafter. The judge's response merely indicated that he relied on the stipulation and the conclusion of the report that the defendant was competent. This is insufficient because the record must reflect the trial judge made an independent determination of competency.

In *Dougherty v. State*, 149 So. 3d 672 (Fla. 2014), the Florida Supreme Court stated that due process concerns require a trial court to make an independent determination of a defendant's competency notwithstanding a stipulation of the parties. "Accepting a stipulation improperly absolves the trial court from making an independent determination regarding a defendant's competency to stand trial." *Id.* at 678.

This court has stated, once a trial court has reasonable grounds to question a defendant's competency, the court must conduct a hearing and "make its own *independent* finding of

---

THE CLERK: We haven't.

[DEFENSE COUNSEL]: Okay.

THE CLERK: I just need - -

[DEFENSE COUNSEL]: Judge, there are a couple of housekeeping measures we need to take care of on Mr. McCray. The first is, there was a suggestion of incompetency. The examination's been completed. The report is what was just handed to you a moment ago. It determined he is competent. I think the State is prepared to stipulate to that report, so we need a finding of competency as we move forward.

THE COURT: Okay. Based on the report and the State's stipulation, Mr. McCray is found to be competent to assist his attorney and proceed to trial, proceed through including the trial.

7

competence or incompetence." *Zern v. State*, 191 So. 3d 962, 964 (Fla. 1st DCA 2016) (emphasis added). While the court "may decide the issue based on the experts' reports without receiving any testimony," *the trial court may not accept the ultimate conclusion of these reports without reading them*, because doing so would not constitute an "*independent*" evaluation. *Id.* (emphasis added).

In *Zern*, after two expert reports reached opposite conclusions of whether the defendant was competent, the court ordered a third evaluation that concluded the defendant was competent. 191 So. 3d at 963-64. During a hearing, "the court indicated that it had not yet seen the third report," but defense counsel advised it found the defendant was competent and asked the court to declare the defendant competent "based on the reports." The court found him competent. *Id.* 964. This court reversed, reasoning "[t]he record in this case establishes that the trial court relied on the stipulation of defense counsel and the preponderance of the experts' ultimate opinions to make its competency determination, *without having read all the evaluations. It does not show an independent finding*." *Id.* at 965 (emphasis added).

Other courts have reached the same conclusion where it was unclear from the record whether the trial court read the evaluations. In *A.L.Y. v. State*, 212 So. 3d 399, 400-01 (Fla. 4th DCA 2017), the court ordered two mental health evaluations. During a status hearing, a liaison for the Department of Juvenile Justice informed the court that the juvenile had been "'evaluated by the doctors'" who concluded he was "'competent on both cases.'" *Id.* at 401. During the next status hearing, the court stated, "He's competent." *Id.* The Fourth District reversed, finding "the court's statement cannot represent an *independent factual finding* that the juvenile was competent to proceed *where nothing in the record indicates that the court reviewed the reports*, instead of merely relying on the DJJ's in-court liaison's statements that the juvenile had been 'evaluated by the doctors' and was 'competent on both cases.'" *Id.* at 403. *See also Hawks v. State*, 226 So. 3d 892, 894 (Fla. 4th DCA 2017) (reversing a determination of competency because "[t]he record *does not indicate whether the court reviewed the evaluations* it ordered or made any findings based upon any evaluations, and "[m]erely asking counsel whether the Defendant [was] competent was not sufficient to satisfy Rule 3.210(b), which

requires the court to hold a hearing to *independently* determine the Defendant's competency") (emphasis added); *Raithel v. State*, 226 So. 3d 1028, 1031 (Fla. 4th DCA 2017) (reversing where trial court expressly declined to review competency evaluation during one hearing and "[t]he record fails to reveal that the competency evaluation was *reviewed by the trial court*, that a hearing was held, or an order determining competency was entered") (emphasis added); *Hendrix v. State*, 228 So. 3d 674, 676 (Fla. 1st DCA 2017) (noting "reports of experts are 'merely advisory to the [trial court], which itself retains the responsibility of the decision'" (quoting *Hunter v. State*, 660 So. 2d 244, 247 (Fla. 1995))).

The record in this case does not indicate the trial court did anything other than accept the parties' stipulation and the report's conclusions. Reversal for a nunc pro tunc determination is required.

_____

Andy Thomas, Public Defender, and Danielle Jorden, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Brooke Moody, Attorney General, and Virginia Chester Harris, Assistant Attorney General, Tallahassee, for Appellee.