# Third District Court of Appeal

## State of Florida

Opinion filed October 30, 2024.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D23-1042
Lower Tribunal No. F19-14993

————————

**Anthawn Ragan, Jr.,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Daryl E. Trawick, Judge.

Carlos J. Martinez, Public Defender, and Manuel Alvarez, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Katryna Santa Cruz, Assistant Attorney General, for appellee.

Before EMAS, LINDSEY and MILLER, JJ.

EMAS, J.

## I. INTRODUCTION

Anthawn Ragan, Jr. appeals his judgment and sentence following a jury trial in which he was found guilty of attempted felony murder upon Kevin Burke with a firearm or deadly weapon (Count 1) and attempted premeditated murder upon Kevin Burke with a deadly weapon (Count 2).[1]

---

[1] Attempted felony murder is a first-degree felony, punishable by up to thirty years in prison. See § 782.051(2), Fla. Stat. (2013). Attempted premeditated murder is a first-degree felony as well. See §§ 782.04(1)(a)1., Fla. Stat. (2013) (classifying premeditated murder as a "capital felony") and 777.04(4)(b), Fla. Stat. (2013) (providing: "If the offense attempted, solicited, or conspired to is a capital felony, the offense . . . is a felony of the first degree . . . .").

However, the jury determined by its verdict that, as to each count, Ragan did "personally carry, display, use, threaten to use, [or] attempt to use, a firearm," thereby reclassifying each offense from a first-degree felony to a life felony. § 775.087(1)(a), Fla. Stat. (2013) (providing generally for reclassification of a first-degree felony to a life felony if "during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm . . . .").

In addition, the jury determined by its verdict that, as to each count, Ragan did "personally discharge a firearm" resulting in "death or great bodily harm" to the victim, thus requiring imposition of a twenty-five-year mandatory minimum under the 10/20/Life statute. See § 775.087(2)(a)3., Fla. Stat. (2013) (requiring imposition of a minimum mandatory sentence of twenty-five years where "during the course of the commission of the felony such person discharged a 'firearm' . . . and, as the result of the discharge, death or great bodily harm was inflicted upon any person . . . .").

As to each count, the trial court imposed concurrent sentences of 37.5 years, with a twenty-five-year mandatory minimum.

Ragan raises two claims on appeal: (1) the Williams[2] rule evidence admitted at trial was excessive and became an impermissible feature of the trial; and (2) the charged offenses of attempted felony-murder and attempted premeditated murder arise from the same criminal episode and involve a single victim; therefore, the dual convictions and the imposition of sentences for both offenses violate double jeopardy.

We hold the trial court did not abuse its broad discretion in admitting the Williams Rule evidence, see Wright v. State, 317 So. 3d 237, 240 (Fla. 3d DCA 2021) ("The admissibility of collateral crime evidence is within the discretion of the trial court, and the trial court's ruling shall not be disturbed upon review absent an abuse of that discretion.") (quotation omitted) and, importantly, properly limited the jury's consideration of the evidence through evidentiary rulings and instructions to the jury, ensuring that the Williams Rule evidence did not become a feature of the trial. See § 90.404(d)2., Fla. Stat. (2023) ("When the evidence is admitted, the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and

---

[2] The "Williams Rule" derives its name from Williams v. State, 110 So. 2d 654 (Fla. 1959), and is codified at section 90.404(2)(a), Florida Statutes (2023). The Williams Rule (sometimes referred to as the "collateral crimes" rule) permits introduction of similar evidence of other crimes, wrongs, or acts when relevant to prove a material fact in issue.

is to be considered. After the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not included in the indictment or information.")

We further hold that dual convictions for attempted felony murder and attempted premeditated murder of a single victim is permissible under the Blockburger[3] test and in light of the Florida Supreme Court's decision in State v. Maisonet-Maldonado, 308 So. 3d 63 (Fla. 2020), which eliminated the "single homicide victim" rule from Florida's double jeopardy jurisprudence.

## II.    FACTS AND PROCEDURAL HISTORY

On November 7, 2013, Kevin Burke, the victim, bicycled to a friend's house where he drank alcohol and ingested cocaine. At about 2:00 a.m., Burke left on his bicycle, intending to go home, when a vehicle slowly passed him and stopped.  The passenger of the vehicle got out of the car and said, "Where's the money at?" Burke saw the perpetrator's arm rising and tried to flee on his bicycle. Several shots were fired, one hitting Burke in the arm, causing him to fall to the ground.  The perpetrator walked toward Burke, but

---

[3] Blockburger v. United States, 284 U.S. 299 (1932).

4

fled when a neighbor was apparently alerted to the commotion. Burke was later airlifted to the hospital where he remained for four weeks.

The initial police investigation met with no success. The case went cold until 2019, when forensic evidence connected this November 7, 2013, shooting to two other crimes committed with the same firearm. Once that connection was made, a photo display was prepared and shown to Burke, who identified Ragan as the person who shot him.

In August 2019, Ragan was charged with attempted felony murder of Kevin Burke with a firearm and attempted premeditated murder of Kevin Burke with a deadly weapon.

Prior to trial, the State filed its notice of intent to rely on evidence of other crimes, wrongs, or acts pursuant to section 90.404(2)(a) and (2)(d), Florida Statutes (2023),[4] to prove "material facts in issue," including the

---

[4] Section 90.404(2)(a), Florida Statutes (2023), provides:

> Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

Section 90.404(2)(d)1., Florida Statutes (2023), provides:

> When the state in a criminal action intends to offer evidence of other criminal offenses under paragraph (a), paragraph (b), or

identity of Ragan as the perpetrator of this crime. The State's notice described the Williams Rule evidence:

> **On November 7, 2013**, defendant Ragan attempted to rob and murder Kevin Burke by shooting at him several times with the **same firearm that was used on November 22, 2013**, when defendant Ragan attempted to rob and murder Hai Vu by shooting him, and did murder A.V. by shooting him. State v. Ragan, F13-27758. Moreover, it is the **same firearm that was used** to shoot and murder Luis Perez **on November 1, 2013**. State v. Ragan, F13-28437.

(emphasis added).

Over defense objection, the trial court admitted the Williams Rule evidence, finding it relevant to the "limited purpose of establishing the identity of who may have committed the crimes charged."

The parties presented opening statements, during which the State made no mention of the November 1 and November 22 shootings that were committed with the same firearm used by Ragan on November 7. Following opening statements, the State called twelve witnesses to testify, including the victim and his wife. Five witnesses testified about the collateral crimes: Commander Mike Gaudio (investigator for November 1, murder of Luis

---

paragraph (c), no fewer than 10 days before trial, the state shall furnish to the defendant or to the defendant's counsel a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information. No notice is required for evidence of offenses used for impeachment or on rebuttal.

Perez), Terry Nealy (co-perpetrator of November 1, murder of Luis Perez), Detective Christine Kruse (crime scene investigator for November 22, attempted robbery and murder of Hai Vu), Theresa Smith-Young (eyewitness of November 22, attempted robbery and murder of Hai Vu), and Angela Garvin (firearms examiner with Miami-Dade County crime lab).

These five witnesses generally testified to the following regarding the two collateral crimes:

- On November 1, 2013, Luis Perez was murdered at a Motel 7. Terry Nealy testified that he and Ragan each shot Perez. They went to the motel to buy drugs. Ragan went upstairs; Nealy heard a gunshot, ran upstairs, and saw Ragan shoot Perez. Nealy also shot the victim. The State played a surveillance video from the motel, and Nealy identified Ragan in that video.

- On November 22, 2013, two men with firearms walked into a nail salon. One man's face was covered, the other man's face was not. Theresa Smith-Young, a patron of the salon, testified that the man with the covered face attempted to rob various patrons, including the owner, Hai Vu. There was an altercation and the owner was shot and killed. A few days later, Young identified Ragan as the assailant whose face was not covered.

- The firearms examiner, Garvin, confirmed that the casings from all three crimes were fired by the same gun.

Through these witnesses, the State introduced other evidence establishing that Ragan was the perpetrator in those crimes, e.g., surveillance video from Motel 7 and the nail salon in which Ragan is arguably identifiable.

The trial court repeatedly instructed the jury regarding the limited purpose for which the jury could consider this <u>Williams</u> Rule evidence. For example, during the testimony of Terry Nealy (co-perpetrator of the November 1, murder of Luis Perez) the trial court instructed the jury:

> Ladies and gentlemen, you have during the testimony that's been presented, received evidence concerning other crimes, wrongs or acts allegedly committed by the Defendant. These exhibits will be considered by you for the limited purpose of establishing the identity of who may have committed the crimes charged. You should consider it only as it relates to this issue. However, the Defendant is not on trial for a crime wrong or act that is not included in the information.

The following day of trial, during the testimony of Smith-Young, an eyewitness to the November 22 armed robbery and murder of Hai Vu, the trial court instructed the jury:

> Ladies and gentlemen, before we go any further, let me remind you of the instruction I gave you a little bit earlier, actually, at the end of the day yesterday. The evidence that you have just observed concerning other crimes[,] wrong or acts allegedly committed by the Defendant will be considered by you for the limited purpose of proving identity, and you should consider it only as it relates to that issue. However, the Defendant is not on

8

trial for a crime[,] wrong or act that is not included in the information.

At the conclusion of the State's case, Ragan moved for a mistrial based on the purported erroneous introduction of the Williams Rule evidence. The trial court denied the motion. The parties presented closing arguments, during which the State addressed the collateral crime testimony and evidence. The State cited the shell casings as corroborating evidence of Burke's identification of Ragan as the assailant who shot and attempted to rob him. The State also relied on surveillance video from both collateral crimes and still photos taken from those videos to further connect Ragan to the use of the same firearm in all three crimes, and to prove his identity as the perpetrator of the crimes committed upon Kevin Burke.

During the defense's closing argument, defense counsel clarified that Ragan was not on trial for the two collateral crimes and that evidence from those crimes was intended for a "very limited purpose." Defense counsel later pointed out that the State "lean[ed] so heavily" on evidence from the other two crimes because, without such evidence, there is reasonable doubt.

On rebuttal, the State briefly readdressed the purpose for introducing the collateral crimes evidence: if Ragan possessed and shot this particular firearm during the November 1 crime, and Ragan possessed and shot this particular firearm during the November 22 crime, this independent evidence

9

is relevant to establish that Ragan possessed this same firearm and shot it during the commission of this crime on November 7. The State also argued the evidence corroborated Burke's 2019 identification of Ragan as the person who shot him during the attempted robbery.

In its final instructions to the jury, the trial court once more provided guidance to the jury on the limited use of the evidence of these collateral crimes:

> The evidence which has been admitted to show other crimes[,] wrongs, or acts allegedly committed by the Defendant will be considered by you only as that evidence relates to identity. However, the Defendant cannot be convicted for a crime, wrong or act that is not included in the information. You have heard testimony of eyewitness identification. In deciding how much weight to give this testimony, you may consider the various factors mentioned in these instructions concerning credibility [of] witnesses.

The jury found Ragan guilty on both counts and the trial court sentenced him to 37.5 years in prison on each count, each with a twenty-five-year mandatory minimum. The sentences for each count were ordered to run concurrently.

This appeal followed.

## III.   STANDARDS OF REVIEW

The trial court has broad discretion in determining not only the relevance of evidence, but also whether its "probative value is substantially

10

outweighed by the danger of unfair prejudice," thereby rendering such evidence inadmissible. § 90.403, Fla. Stat. (2023); Rodriguez v. State, 753 So. 2d 29 (Fla. 2000). See also Wright, 317 So. 3d at 240 ("The admissibility of collateral crime evidence is within the discretion of the trial court, and the trial court's ruling shall not be disturbed upon review absent an abuse of that discretion.") (quoting Hodges v. State, 885 So. 2d 338, 357 (Fla. 2004)).

As to Ragan's second argument on appeal, "[a] double jeopardy claim based upon undisputed facts presents a pure question of law and is reviewed de novo." Maisonet-Maldonado, 308 So. 3d at 66 n.2 (quoting Pizzo v. State, 945 So. 2d 1203, 1206 (Fla. 2006)).

## IV. ANALYSIS AND DISCUSSION:

Ragan raises two arguments on appeal: (1) the trial court committed reversible error in permitting the State to introduce evidence that the firearm used by Ragan in the instant case was allegedly used by Ragan to commit two other homicides because "[t]he quantity and quality of the collateral crimes evidence overwhelmed the evidence of the crimes charged in this case and impermissibly became a feature of the case"; and (2) at least one of the convictions should be vacated because dual convictions for attempted felony murder with a firearm and attempted premeditated murder with a deadly weapon violate double jeopardy under the merger principle.

11

## A. The *Williams* Rule Evidence

Section 90.404(2)(a), Florida Statutes (2023), provides for the admission of other crimes, wrongs or acts under certain conditions:

> (a) Similar fact evidence of other crimes, wrongs, or acts is admissible **when relevant to prove a material fact in issue, including**, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, **identity**, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

(emphasis added). Such evidence is also known as Williams Rule evidence or collateral crimes evidence. Conde v. State, 860 So. 2d 930, 945 (Fla. 2003). The test for admissibility of Williams Rule evidence is relevancy:

> "If the proffered evidence is relevant to a material fact in issue, it is admissible even though it points to a separate crime." Id. at 660. This is so "whether the evidence tends to exculpate or convict, *if it is relevant*; that is, if it bears a certain relation to the crime charged to the extent that it is relevant to a fact in issue." Id. at 661 (emphasis in original).

Corner v. State, 868 So. 2d 553, 556 (Fla. 3d DCA 2004) (quoting Williams v. State, 110 So. 2d 654, 659-61 (Fla.1959)). See also Pitts v. State, 263 So. 3d 834, 838 (Fla. 1st DCA 2019) ("Section 90.404(2)(a) establishes the general rule that collateral crime evidence is admissible when relevant to prove a material fact in issue, but is inadmissible when the evidence is relevant solely to prove bad character or propensity.") (quotation omitted).

12

Here, the collateral crimes evidence—evidence that the firearm used by Ragan to commit crimes on November 1 and 22, 2013, was also used by Ragan to commit the instant crime on November 7, 2013—was plainly relevant to prove Ragan's identity as the perpetrator of the instant offenses. Ragan was identified through surveillance videos and eyewitness testimony as the assailant in those collateral crimes, and as having used the same firearm in those crimes as that used in the underlying crime. This evidence was especially relevant given the temporal proximity of the three crimes (November 1, November 7, and November 22, 2013) and the passage of six years between the commission of the crimes (during which the case went "cold") and the discovery of the evidence linking Ragan (and his use of the same firearm) to all three crimes. On appeal, Ragan does not dispute the relevancy of this evidence, contending instead that the evidence admitted was "excessive" and became an impermissible feature of the trial.

Importantly, while relevant collateral crimes evidence is admissible, it must not become a feature of the trial—if it does, and the danger of unfair prejudice substantially outweighs the probative value of the evidence, a new trial is required. Pitts, 263 So. 3d at 840 ("When collateral crime evidence is admitted, the trial court must guard against allowing [the evidence] to become a feature of the trial.") (quotation omitted).

13

The question here, then, is whether this evidence became an impermissible feature of the trial, causing the "probative value [to be] substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (2023)

There is no singular test to determine when collateral crime evidence becomes an impermissible feature of trial; such a determination is generally made "on a case-by-case basis." Pitts, 263 So. 3d at 840. However, courts do consider certain factors in reaching a determination. For example, the number of references the prosecution made to such evidence; whether the collateral crimes evidence was a focus of closing argument; and how the trial court, through its instructions, guided and limited the jury's consideration and use of this evidence. Id. See also Morrow v. State, 931 So. 2d 1021, 1022 (Fla. 3d DCA 2006) ("Whether the collateral crime has become a feature is not measured simply by the number of references."); Snowden v. State, 537 So. 2d 1383, 1385 (Fla. 3d DCA 1989) ("More is required for reversal than a showing that the evidence is voluminous."); Townsend v. State, 420 So. 2d 615, 617 (Fla. 4th DCA 1982) (explaining that the number of transcript pages and exhibits related to collateral crimes evidence is not the sole test when such quantity is the result of there being numerous similar crimes).

14

Ultimately, collateral crimes evidence becomes an impermissible feature of the trial "when the evidence transcend[s] the bounds of relevancy to the charge being tried and the prosecution devolves from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant." Pitts, 263 So. 3d at 840 (quotation omitted).

Upon our review of the evidence and arguments at trial, and consideration of the factors delineated above, we find no abuse of discretion in the trial court's admission of the Williams Rule evidence and arguments of counsel, and hold that the trial court acted diligently to ensure the collateral crimes evidence did not become an impermissible feature of the trial. To this end:

• The trial court properly instructed the jury—twice during presentation of the State's case and once in its final jury instructions—that the evidence was to be considered "for the limited purpose of establishing the identity of who may have committed the crimes charged" and the jury "should consider it only as it relates to this issue." The instruction concluded by explaining that Ragan was not on trial for any crime not included in the charging document.

• The State did not discuss the Williams Rule evidence in its opening statement.

15

• Twelve witnesses testified at trial. Six of the witnesses provided some testimony regarding the collateral crimes evidence. The examination of those witnesses, as it relates to the collateral crimes, was highly focused and generally brief.

• The State's closing argument discussed the collateral crimes evidence by tying it directly to establishment of the identity of Ragan as the perpetrator of the offenses for which he was on trial: Ragan committed the underlying offense on November 7, 2013, because evidence was presented to show Ragan used the very same firearm to commit a separate crime one week before he committed this crime, and two weeks after he committed this crime.

Taken together (the opening statement, "pace" and focus of the evidence, jury instructions, and closing argument), the collateral crime evidence did not become a feature of trial—i.e., the collateral crime evidence was not mentioned in opening statements, the first four witnesses testified to the underlying crime, the last witness to testify addressed the forensic evidence linking the three crimes as having been committed by the same person using the same firearm, and during closing argument, the State discussed the collateral crimes evidence for the limited purpose for which it was admitted to establish the assailant's identity. Burgess v. State, 324 So.

16

3d 582, 590 (Fla. 1st DCA 2021) ("[R]elevant evidence of collateral crimes impermissibly becomes a feature of the trial when the evidence transcend[s] the bounds of relevancy to the charge being tried and the prosecution devolves from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant.") (quoting Peterson v. State, 2 So. 3d 146, 155 (Fla. 2009)).

### B. Dual Convictions and Sentences for Attempted Premeditated Murder and Attempted Felony of the Same Victim

Ragan contends that dual convictions and sentences for attempted felony murder and attempted premeditated murder arising from a single criminal episode and committed upon a single victim, violates double jeopardy and, relatedly, the merger doctrine. Given recent caselaw, his contention is incorrect.

The single homicide rule was first established in Houser v. State, 474 So. 2d 1193 (Fla. 1985). There, the defendant was convicted and sentenced for both DWI manslaughter and vehicular homicide, even though his actions resulted in a single death. On appeal, the defendant contended that double jeopardy principles prohibited imposition of dual convictions for homicide offenses resulting in a single death. The Florida Supreme Court agreed. While acknowledging that the two crimes constitute separate offenses under a Blockburger analysis, the Court held that "only one homicide conviction

17

and sentence may be imposed for a single death." Id. at 1196. Houser reasoned that "Blockburger and its statutory equivalent in section 775.021(4), Fla. Stat. (1983)[5], are only tools of statutory interpretation which cannot contravene the contrary intent of the legislature," and observed that "Florida courts have repeatedly recognized that the legislature did not intend to punish a single homicide under two different statutes." Id. at 1196-97.

---

[5] In 1983, section 775.021(4), Florida Statutes, provided:

> Whoever, in the course of one criminal transaction or episode, commits separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

Section 775.021(4) was subsequently amended to add subsection (4)(b), and the 2013 version (applicable to the instant case) includes the following additional language:

> (b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
> 1. Offenses which require identical elements of proof.
> 2. Offenses which are degrees of the same offense as provided by statute.
> 3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

In <u>Maisonet-Maldonado</u>, 308 So. 3d at 65, the Florida Supreme Court addressed the following question, certified by the Fifth District Court of Appeal, as one of great public importance:

> DOES THE "SINGLE HOMICIDE" RULE FOUND IN *HOUSER V. STATE*, 474 SO. 2D 1193 (FLA. 1985), PRECLUDE SEPARATE CONVICTIONS OF VEHICULAR HOMICIDE AND FLEEING AND ELUDING CAUSING SERIOUS INJURY OR DEATH THAT INVOLVE THE SAME VICTIM?

The Court answered that question in the negative, abolishing the "single homicide" rule, first established in <u>Houser</u>, "that dual convictions for offenses resulting from a single death were prohibited in Florida." <u>Id.</u> at 67. The Court in <u>Maisonet-Maldonado</u> held that the statutory language of section 775.021(4), Florida Statutes (2010), "clearly expresses that offenses which pass the codified <u>Blockburger</u> test should be punished separately and that there is no exception for offenses arising from a single death." <u>Id.</u> at 69. The only exceptions to the rule, it continued, are those listed in section 775.021(4), Florida Statutes (2010),[6] which provides:

> (4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof

---

[6] The 2010 version of section 775.021(4) construed by the Court in <u>Maisonet-Maldonado</u> is identical to the 2013 version applicable in the instant case.

19

of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.

2. Offenses which are degrees of the same offense as provided by statute.

3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

"Under the plain meaning of section 775.021(4)(a), Florida Statutes (1993), a court is required to examine each of a defendant's convictions arising out of the same incident to determine whether 'each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.'" Id. at 70 (quoting Gaber v. State, 684 So. 2d 189, 190 (Fla. 1996)). Courts are to look to the statutory elements of the offenses, not to the "facts of the record," to determine where one offense "requires proof of an element that the other does not." Id. If the test is satisfied, the courts turn to whether an exception applies under section 775.021(4)(b)(1)-(3):

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as

set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

As applied here, Ragan was convicted of attempted first-degree murder and attempted felony murder, arising from the same criminal episode and committed upon a single victim. We first turn to the statutory elements of each offense (rather than the accusatory pleading or the proof at trial) to determine whether each offense requires proof of an element that the other does not. And since the element of "attempt" is the same for both offenses, our analysis focuses on the elements of the completed offenses of first-degree premeditated murder and first-degree felony murder.

**First-Degree Premeditated Murder**

The three elements of first-degree premeditated murder are set forth in the standard jury instructions:

To prove the crime of First-Degree Premeditated Murder, the State must prove the following three elements beyond a reasonable doubt:

    1.    (Victim) is dead.

    2.    The death was caused by the criminal act of (defendant).

    3.    There was a premeditated killing of (victim).

21

Fla. Std. Jury Instr. (Crim.) 6.2.

## **First-Degree Felony Murder**

The three elements of first-degree felony murder are also set forth in the standard jury instructions:

To prove the crime of First-Degree Felony Murder, the State must prove the following three elements beyond a reasonable doubt:

1.    (Victim) is dead.

*Give 2a, 2b, and/or 2c as applicable.*
2.    a.  **While engaged in the commission of a[n] (felony alleged),** [(defendant)] [(defendant's) accomplice] caused the death of (victim).

a.  **While engaged in the attempt to commit a[n] (felony alleged),** [(defendant)] [(defendant's) accomplice] caused the death of (victim).

b.  **While escaping from the immediate scene after [committing] [attempting to commit] a[n] (felony alleged),** [(defendant)] [(defendant's) accomplice] caused the death of (victim).

*Give 3a if defendant was the person who actually killed the deceased.*
3.    a. (Defendant) was the person who actually killed (victim).

*Give 3b if defendant was not the person who actually killed the deceased.*
b. (Victim) was killed by a person other than (defendant); but both (defendant) and the person who killed (victim) were principals in the commission of (crime alleged).

**In order to convict the defendant of First-Degree Felony Murder, it is not necessary for the State to prove that the defendant had a premeditated design or intent to kill.**

Fla. Std. Jury Instr. (Crim.) 7.3. (emphasis added).

As can be seen, each offense "requires proof of an element that the other does not:" felony murder requires proof that the defendant was engaged in the commission (or attempted commission or escape from the commission or attempted commission) of an enumerated felony while premeditated murder does not require such an element of proof. First-degree premeditated murder requires proof that the defendant acted with the intent to kill, while, for first-degree felony murder, "it is not necessary for the State to prove that defendant had a premeditated design or intent to kill." Id. See also Williams v. State, 90 So. 3d 931, 935 (Fla. 1st DCA 2012) (holding that "dual convictions for attempted premeditated first-degree murder and attempted felony murder do not violate double jeopardy under the standard double jeopardy analysis" since each offense requires an element of proof that the other does not).

In addition, none of the three exceptions apply. As shown above, the offenses do not require identical elements of proof. Nor are the offenses degrees of the same offense. As pointed out by the State, attempted felony murder is codified in section 782.051, Florida Statutes, and attempted first-

23

degree murder is codified in section 782.04, Florida Statutes. Compare with Valdes v. State, 3 So. 3d 1067, 1077-78 (Fla. 2009) (finding dual convictions of discharging a firearm from a vehicle in violation of section 790.15(2) and shooting into an occupied vehicle in violation of section 790.19 did not satisfy the second exception because the two offenses are found in separate statutory provisions, and observing: "This is in contrast to sections 790.15(1), 790.15(2), and 790.15(3), which are explicitly degree variants of the same offense.") (footnotes omitted); Velazco v. State, 342 So. 3d 614, 616 (Fla. 2022) (holding that dual convictions of DUI and DUI causing serious bodily injury violated double jeopardy because the two offenses are degree variants of the same offense under section 775.021(4)(b)2.—i.e., the dual convictions "arise out of a single act of driving under the influence, running into a single victim, and causing serious bodily injury to the victim and damage to the victim's scooter").

Finally, neither is a necessarily lesser-included offense subsumed within the other (i.e., by proving one offense you do not necessarily prove the other offense). See Fla. Std. J. Instr. (Crim.) 7.2 (listing only "second degree (depraved mind) murder" and "manslaughter" as "Category One" necessarily lesser-included offenses of First-Degree Premediated Murder); Fla. Std. J. Instr. (Crim.) 7.3 (listing only "manslaughter" as a "Category One"

24

necessarily lesser-included offense of First-Degree Felony Murder). See also Scurry v. State, 521 So. 2d 1077 (Fla. 1988) (noting that second-degree murder and manslaughter are identified as necessarily lesser-included offenses of First-Degree Premediated Murder, and that manslaughter is identified as a necessarily lesser-included offense of first-degree felony murder).

### The "Single Homicide" Rule and Merger Doctrine

Nevertheless, Ragan contends that, even if standard double jeopardy principles do not prohibit dual homicide convictions and sentences for a single death resulting from a single act, the related "single homicide rule" does prohibit such dual convictions and sentences. Ragan relies for this proposition on Williams, 90 So. 3d at 931, and Wilkes v. State, 123 So. 3d 632 (Fla. 4th DCA 2013). Each of these decisions applies the doctrine (whether characterized as the "single homicide rule" or the "merger doctrine") to hold that "where, as here, there is a single attempt to cause death to a victim, dual convictions for both attempted murder and attempted felony murder cannot stand." Wilkes, 123 So. 3d at 634-35. And prior to 2020, it was generally recognized that "the principle of merger, prohibiting multiple punishments for a single killing, 'is an exception to the standard double

25

jeopardy analysis.'" <u>Barnett v. State</u>, 283 So. 3d 927, 929 (Fla. 2d DCA 2019) (quoting <u>Williams</u>, 90 So. 3d at 934).

Nevertheless, we must recognize that, unlike double jeopardy, the "single homicide rule" or related merger doctrine is not a principle of constitutional law but rather a principle of statutory construction. And the "single homicide rule," as applied in <u>Williams</u> and <u>Wilkes</u>, merely reflects this judicially created principle of statutory construction to bar dual homicide convictions and sentences for a single death resulting from the same criminal act. See <u>Raja v. State</u>, 317 So. 3d 139, 147 (Fla. 4th DCA 2021) (observing: "The single homicide rule is 'a judicially created extension of the constitutional and statutory double jeopardy bar. It provides that although a defendant can be charged and convicted under multiple criminal statutes for conduct causing another's death during one criminal episode, that criminal defendant can only be punished once for that death.'") (quoting <u>McCullough v. State</u>, 230 So. 3d 586, 589 (Fla. 2d DCA 2017)).

However, and as discussed above, in 2020, the Florida Supreme Court eliminated this judicially-created "single homicide rule" and with it the related doctrine of merger. To the extent that such a rule or doctrine conflicts with the plain and unambiguous language of section 775.021(4), as construed by

the Court in <u>Maisonet-Maldonado</u>, the opinions relied upon by Ragan are no longer good law on this point.

It is beyond peradventure that "there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal transaction as long as the Legislature intends to authorize separate punishments." <u>Valdes</u>, 3 So. 3d at 1069. The Florida Legislature, by the express language contained in section 775.021(4), has expressed its clear intent that a person who "commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively." § 775.021(4)(a), Fla. Stat. (2013).

There are only three enumerated statutory exceptions, and neither the "merger doctrine" nor the "single homicide rule" is among them. As the <u>Maisonet-Maldonado</u> Court observed: "None of these exceptions grants a general protection against multiple convictions for offenses arising from a single death, and because the list is exhaustive, we may not add an exception where the text does not provide for one." <u>Maisonet-Maldonado</u>, 308 So. 3d at 69.

27

Thus, the judicially-created principle of statutory construction (recognized by the Florida Supreme Court in Houser) which once prohibited dual homicide convictions and sentences for a single death (and by extension here, dual attempted homicide convictions and sentences for a single attempted death) simply has no place within the statutory scheme. As the Court concluded in Maisonet-Maldonado, 308 So. 3d at 69: "After the 1988 amendment, the plain language of section 775.021 clearly expresses that offenses which pass the codified Blockburger test should be punished separately and that there is no exception for offenses arising from a single death. Accordingly, we conclude that the 1988 amendment to section 775.021 superseded our decision in Houser . . . ."

Where, as here, the Blockburger test is satisfied, and none of the statutory exceptions apply, our inquiry is complete and the dual convictions and sentences do not violate principles of double jeopardy.

Affirmed.